[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION AND JUDGMENT ENTRY
This case is on appeal from the September 10, 1997 judgment of the Erie County Court of Common Pleas which sentenced appellant following his conviction on one count of violating R.C.2925.03(A)(9), aggravated drug trafficking. On appeal, appellant asserts the following assignments of error:
"I. TRIAL COURT ERRED IN FAILING TO GRANT DEFENDANT/APPELLANT'S MOTION TO SUPPRESS.
 "(A) THE CLAIMED VIOLATION OF O.R.C. SEC. 4511.33
WAS A FABRICATION AND PRETEXT TO JUSTIFY AN INVESTIGATIVE STOP.
 "(B) THE PRETEXUAL STOP LACKED SUFFICIENT JUSTIFICATION TO CONDUCT A `FISHING EXPEDITION' FOR EVIDENCE OF CRIME.
 "(C) THE NARCOTICS DOG FAILED TO ALERT IN A POSITIVE OBJECTIVE MANNER WHICH FAILED TO ESTABLISH PROBABLE CAUSE TO SEARCH THE VEHICLE.
 "II. THE OHIO STATE HIGHWAY PATROL ILLEGALLY IMPOUNDED DEFENDANT/APPELLANT'S VEHICLE TO CONDUCT AN INVESTIGATIVE SEARCH OF THE VEHICLE AND CONTENTS WITHOUT A SEARCH WARRANT."
On July 24, 1996, appellant was indicted on four counts of violating R.C. 2925.03(A)(9), knowingly possessing 5,826.072 grams of cocaine, an amount equal to or exceeding one hundred times the bulk amount; R.C. 2925.11(A), knowingly possessing approximately .623 grams of heroin; R.C. 2925.03(A)(2), trafficking in cocaine; and R.C. 2925.03(A)(2), trafficking in heroin. Each count carried a specification of a prior offense of robbery with a firearm.
Appellant moved to suppress all evidence obtained as a result of the search of his vehicle. The court denied appellant's motion to suppress on March 12, 1997. Appellant then changed his plea to no contest as to Count 1. Appellee entered a nolleprosequi as to Counts 2, 3, and 4 and the specification. Appellant was found guilty of violating R.C. 2925.03(A)(9) and was sentenced.
In his first assignment of error, appellant argues that the trial court erred when it denied his motion to suppress because: 1) the marked lanes violation was a fabrication and pretext to justify an investigative stop; 2) the pretexual stop lacked sufficient justification to conduct a fishing expedition for evidence of a crime; and 3) the narcotics dog's failure to alert in a positive objective manner prevented the officers from having probable cause to search the vehicle. We begin by addressing the first issue raised. The following evidence was presented at the suppression hearing regarding the events that led up to the traffic stop.
Trooper Smith testified that he has been a patrol officer for six and one-half years and has attended numerous drug interdiction training sessions. At the time of this search, he was assigned to the drug trafficking interdiction team.
The trooper testified that on June 11, 1996, he was called back to duty around 10:20 p.m. by his supervisor. He entered the Ohio Turnpike at Gate 6-A and proceeded westbound. He parked his patrol car near the 105 milepost and watched the eastbound traffic passing through a construction area. He was watching for a dark green Jeep Cherokee vehicle with a specific license plate number. The weather was dry that evening and the roadway was clearly marked. The traffic was moderate.
Soon thereafter, the trooper spotted a vehicle matching the description he was given and began to follow it. He also activated a video camera on the patrol car. The trooper noticed that appellant, the driver, weaved three to four times within his lane as he drove through a construction area. The trooper continued to follow the vehicle for four to five miles through the construction zone and then back to the regular divided highway. At that time, the trooper turned his video camera off. Appellant drove in the passing lane and the trooper pulled over into the passing lane to follow appellant near the 116 milepost marker. The trooper observed appellant drive one and one-half to two feet to the left of the "white line" into the berm and then pull back into the lane. This incident occurred near the 119 milepost marker. However, the trooper also testified at the continued hearing a month later that he had been in the driving lane and had turned on his turn signal to exit the Turnpike at Exit 7 when he saw appellant go over the "white line."
The trooper further testified that after he observed appellant drive over the white line, the trooper turned the video camera back on and activated the overhead lights on the patrol car to tell appellant to stop. The trooper admitted that he does not issue a citation to every driver who crosses the marked lines. However, he considers in each case whether the driver's fatigue caused him to cross the marked lines.
Appellant asserts first that the search and seizure in this case violated his rights guaranteed by the Fourth Amendment to the United States Constitution. That provision protects individuals from unreasonable searches and seizures.
We begin our review of the motion to suppress ruling by noting the applicable standards of review for the appellate court. Review of a motion to suppress ruling involves a mixed question of law and fact. United States v. McConney (C.A. 9, 1984), 728 F.2d 1195, certiorari denied (1984), 469 U.S. 824. The trial court acts as the trier of fact; therefore, that court alone weighs the evidence and determines the credibility of the witnesses. The reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Brooks (1996), 75 Ohio St.3d 148,154. Having accepted the facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the facts met the appropriate legal standard. Ornelas v. United States
(1996), 517 U.S. 690 and State v. Anderson (1995),100 Ohio App.3d 688, 691.
The issue of whether or not a warrantless stop is reasonable under the Fourth Amendment to the United States Constitution must be determined on a case by case approach: whether there was probable cause to make the stop or some articulable, reasonable suspicion of criminal activity to justify an investigatory stop.Whren v. United States (1996), 517 U.S. 806 citingDelaware v. Prouse (1979), 440 U.S. 648. See, also,State v. Erickson (1996), 76 Ohio St.3d 3. Where the facts give rise to probable cause to make the stop, it will be considered reasonable unless the search or seizure measures were extreme or unusual. Whren, supra. The subjective intentions of the officer making the stop are irrelevant for purposes of Fourth Amendment analysis; the only issue is whether the objective circumstances justify the stop. Ohio v.Robinette (1996), 519 U.S. 33 and Whren,supra.
Applying these standards to the case at hand, we turn to the specific facts of this case.
R.C. 4511.33(A) provides as follows:
 "Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully moving in two or more substantially continuous lanes in the same direction, the following rules apply:
 "(A) A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety."
Appellant argues that R.C. 4511.33(A) does not prohibit weaving within one's lane and that absolute observance of the lane markings is not required under the statute. Therefore, he argues that the trooper had neither probable cause nor a reasonable, articulable suspicion to justify stopping him.
Appellee argues first in response that this issue is barred under the doctrines of res judicata and collateral estoppel. These doctrines are applicable in criminal actions. State v. Ervin (Sept. 28, 1995), Cuyahoga App. No. 68141, unreported and State v. Bower (Mar. 15, 1996), Ross App. No. 94 CA 2053, unreported. However, the issue of whether appellant was guilty of violating R.C. 4511.33 is not the same as whether the trooper had probable cause or a reasonable, articulable suspicion to stop appellant for driving outside the marked lanes. See, State v. Williams (Nov. 21, 1997), Montgomery App. No. 16306, unreported (defendant's conviction for jaywalking was binding upon the court as to defendant's guilt of violating Dayton Traffic Code Section 75.02, but not as to whether he was lawfully arrested). Therefore, the doctrine of collateral estoppel is not applicable in this case. However, the doctrine of res judicata is applicable in that the trial court was bound to find that appellant did weave outside his lane one and one-half feet after having weaved several times within the construction zone. Since the trial court did not make a contrary finding, we need not address this issue further.
This court held in dicta in State v. Mortensen (Feb. 27, 1998), Erie App. No. E-97-107, unreported, that R.C.4511.33(A) does not prohibit weaving within one's lane and that absolute observance of the lane markings is not required under the statute. But, we added in that case that even a minor infraction of this statute could give rise to an officer's reasonable, articulable suspicion that the driver was impaired. See, also, State v. Deichler (May 23, 1997), Erie App. No. E-96-091, unreported.
Other courts have held that minor weaving outside of the marked lanes alone does not give constitutional justification for stopping the driver to investigate the cause of the weaving. SeeOntario v. Mathews (Oct. 23, 1997), Richland App. No. 97-CA-36-2, unreported; State v. Glasscock (1996),111 Ohio App.3d 371; State v. Johnson (1995), 105 Ohio App.3d 37;State v. Drogi (1994), 96 Ohio App.3d 466;State v. Williams (1993), 86 Ohio App.3d 37; Masonv. Loveless (1993), 87 Ohio App.3d 264; State v.Gullett (1992), 78 Ohio App.3d 138; State v. Resar
(Aug. 7, 1998), Ashland App. No. 96COA01192, unreported; andState v. Brite (June 23, 1997), Athens App. No. 96CA1778, unreported.
Trooper Smith testified in this case that he had stopped appellant to make sure that he was not sleepy or intoxicated. It is also clear from the testimony of Trooper Smith that the marked lanes violation was used as a pretext to investigate an anonymous tip that appellant was transporting illegal drugs. Whether the officer makes the stop as pretext for some other purpose, however, is irrelevant for purposes of a Fourth Amendment analysis. Whren, supra. Therefore, it is irrelevant that the trooper was looking for a traffic violation to use it as a pretext to stop appellant and determine whether he was transporting drugs as the trooper believed.
The real issue in this case is whether the trooper had probable cause to stop appellant to give him a citation for driving outside the marked lanes. If a driver clearly violated a traffic law, the officer has the right to stop the driver to give them a warning or citation. State v. Lowman (1992), 82 Ohio App.3d 831
and State v. Thompson (Mar. 12, 1997), Athens App. No. 96CA1748, unreported. Some courts hold that the traffic violation gives the officer the articulable, reasonable basis for making an investigatory stop. Other courts find that the officer's observation of the traffic violation gives the officer probable cause to stop the driver to give him a warning or citation for the violation. Cf. Whren,supra; Mortensen, supra;Brite, supra, Harsha J., concurring; andDeichler, supra. We agree with the later analysis. Accord, State v. Ward (March 12, 1999), Darke App. No. 1472, unreported (which held that theGullett line of cases were implicitly "overruled" by the Whren, supra, decision.)
We conclude that the fact that appellant weaved out of his marked lane one and one-half to two feet after weaving within the construction zone for no apparent reason was sufficient to give the trooper probable cause to believe that a traffic violation had occurred and probable cause to make the traffic stop. While the statute requires a driver to stay within the marked lanes as nearly as practicable, it does not permit driving outside the marked lanes without a justifiable reason. Assuming, arguendo, that observation of this traffic violation was insufficient to give the trooper probable cause to make the stop, it was at least sufficient to give him an articulable, reasonable suspicion to believe that appellant's driving ability was impaired, which would justify an investigative stop.
Appellant also argues that the trooper's testimony is not credible because his testimony was inconsistent as to where he was driving when he observed the violation and because he testified that appellant crossed over the left edge "white line" when the left edge line is required to be yellow by the Ohio Manual of Uniform Traffic Control Devices. As we noted above, if the testimony is contradictory, it is the trial court's duty to determine the credibility of the officer and make the factual determinations in the case and we must uphold them if there is evidence in the record to support them. In addition in this case, we have also held that the trial court was bound to make the factual findings that appellant had weaved outside the marked lanes based upon his conviction for the offense.
We conclude that the traffic stop in this case was constitutionally justified. Next, we consider whether the trooper wrongfully detained appellant in order to search for additional evidence to support his suspicion of drug trafficking. The following evidence was presented at the suppression hearing regarding this issue.
The trooper testified that he approached appellant's vehicle on the passenger side and spoke to him about the traffic violation. Two other officers stood at the rear of the vehicle. Appellant indicated that the construction zone had confused or dazed him. Appellant was unable to produce a driver's license, but did provide his Social Security number verbally and a business card. The registration for the car was in another name. Appellant claimed to have rented the car in Cleveland. (The trooper later learned that the leasing company was still using the plates of the prior owner of the car.) The trooper had appellant move to the patrol car while he ran a check on appellant's license and registration.
Whenever he had a potential sleepy driver, the trooper testified that he always made them exit their vehicle to get some fresh air. Before allowing appellant to sit in the front seat of the patrol car, the trooper patted appellant down for weapons. Based on the information given to him by his supervisor, the trooper believed that appellant might be armed. The trooper then proceeded to check appellant's Social Security number, which matched his name and birth date. The trooper called for the K-9 because appellant did not have a valid driver's license, the vehicle was not registered in his name, he acted nervous, and he would not make eye contact.
The trooper began to write appellant a citation for the marked lanes violation. During the time the trooper waited for the information from the dispatcher and while he was writing out the ticket, the drug interdiction K-9 unit arrived. About fourteen minutes had passed since the initial stop. At that time, the trooper indicated that the dog, Ork Von Der Gartrop, was going to make a walk-around check of the vehicle to determine if there were any narcotics in the vehicle. At the end of his second pass around the vehicle, Ork alerted to the presence of drugs at the front passenger window, which appellant had lowered to talk to the trooper. Just as the K-9 handler returned to the trooper's patrol car to indicate that Ork had alerted to the presence of drugs, the trooper was handing appellant his citation and his personal papers.
Based on Ork's behavior, the troopers concluded that they had probable cause to search the vehicle. The K-9 handler returned to search the car. The troopers then moved the car to a nearby patrol post where a more extensive search was made.
Both Troopers Smith and Manley testified that there had been cases in the past in which Ork had alerted to the presence of drugs, but nothing was found. However, Trooper Manley explained that Ork could alert to a lingering odor of narcotics or the trooper could have missed the narcotics in his search of the vehicle.
Trooper Manley testified that he has been Ork's handler for five years. He too testified that he had been called back to duty that evening to be on the road if the suspected vehicle was apprehended. When he heard that the vehicle had been spotted, he proceeded to the area and waited to be called to the stop. He further testified that on the first pass around the vehicle, Ork's behavior changed as he passed the left rear wheel. Trooper Manley testified that Ork is trained to follow the handler's fingers and hands and if he breaks away, it is because he has picked up an odor. On his final pass, Ork turned to face the vehicle, waged his tail, and scratched at the vehicle's front passenger door to indicate that he picked up the odor of narcotics. Trooper Manley also testified that Ork is trained to follow the odor to the source when possible. The trooper believed that Ork went to this area of the car because the window was down. The trooper then returned Ork to the patrol car and told Trooper Smith that he would conduct a search of the car for weapons while they waited for someone to drive the vehicle to the post so that the interior could be safely searched. Trooper Manley testified that such a vehicle is routinely moved to the post for search purposes if the K-9 dog alerts to narcotics inside the vehicle. He also testified that he routinely searches such vehicles before they are moved for weapons and for the dog's protection during a later search. During his initial check of the inside of the vehicle at the stop, Trooper Manley found inside the center console two plastic bags filled with smaller Ziploc plastic bags about the size of a postage stamp, which he recognized as the types of bags used for packaging narcotics. During the search at the patrol post, the trooper found appellant's knapsack in the rear area of the vehicle. Inside were four kilos of narcotics. He also found a piece of paper containing cocaine. He also removed a locked briefcase, which he found contained cocaine after it was searched pursuant to a warrant.
Appellant contends that the trooper extended the initial traffic stop in order to be able to find probable cause or a reasonable, articulable suspicion of drug trafficking to justify a search of appellant's vehicle. Again, we must consider these facts based upon an objective standard of reasonableness.
The scope and duration of the investigative stop must not exceed what is necessary to complete the purpose for which the initial stop was made. Florida v. Royer (1983),460 U.S. 491, 500; State v. Robinette (1997), 80 Ohio St.3d 234, paragraph one of the syllabus, and State v.Chatton (1984), 11 Ohio St.3d 59, 63, certiorari denied (1984), 469 U.S. 856. The officer cannot conduct a fishing expedition for evidence of another crime. State v. Montoyaand Hernandez (Mar. 6, 1998), Lucas App. No. L-97-1226, unreported and State v. Avitia (June 28, 1996), Williams App. No. WM-95-033, unreported. If, however, the officer observes additional circumstances that give rise to a reasonable suspicion of some other illegal activity, the officer may detain the driver for as long as that new articulable and reasonable suspicion continues. State v. Venham
(1994), 96 Ohio App.3d 649 and State v. Myers (1990),63 Ohio App.3d 765, 771. An officer may also briefly detain an individual without any reasonable, articulable suspicion of criminal activity if it is necessary to promote a legitimate public concern, e.g., reducing drug trafficking.State v. Robinette, supra at 241. Furthermore, an officer may perform routine procedures so long as they are not used as a excuse to extend the detention of the driver in order to search for evidence of a crime. State v.Rusnak (1997), 120 Ohio App.3d 24, 29. See, also,United States v. Sharpe (1985), 470 U.S. 675, 688 (what constitutes a permissible detention is not based simply on time, but on whether the officer acted diligently under the circumstances).
In the case before us, appellant was not carrying his driver's license. Furthermore, the registration for the car was not in his name, but a similar name, and he did not have a rental agreement or some other documentation to prove that he had rented the car. Therefore, the trooper had the right to check his license and registration. While the trooper was waiting for information from the dispatcher and he completed the citation for the marked lanes violation, the K-9 unit arrived and made a walk-around sniff of the car. By the time appellant was free to go, however, the trooper had probable cause to believe that there were narcotics in appellant's vehicle. This case does not involve the manipulative practices we criticized in State v.Correa (1995), 108 Ohio App.3d 362; State v. Montoyaand Hernandez, supra; State v. Gonyou (1995),108 Ohio App.3d 369; State v. Avitia (June 28, 1996), Williams App. No. WM-95-033, unreported, certiorari denied (1996), 77 Ohio St.3d 1410; and State v. Smotherman
(July 29, 1994), Wood App. No. WD-93-082, unreported.
The final issue appellant raised under his first assignment of error is whether the dog made a positive, objective alert to the presence of narcotics needed to establish probable cause to search the vehicle. Appellant does not argue that the dog sniff is a search. Rather, he first argues that the dog alert is subject to police manipulation and interpretation and, therefore, is not the equivalent to a detached and neutral magistrate that issues a warrant based upon probable cause. This argument is without merit because this court has already held that a properly accredited drug dog alert is sufficient to give an officer probable cause to believe that a vehicle contains narcotics.State v. Palicki (Sept. 16, 1994), Wood App. No. 94WD011, unreported. See, also, State v. Carlson
(1995), 102 Ohio App.3d 585, 600.
Appellant argues secondly that once the trooper's roadside search of the interior of the car where the dog alerted produced nothing, he did not have probable cause to continue the search or move the vehicle to search further. We disagree.
The scope of the warrantless automobile search is determined by the scope of the officer's probable cause to believe that the vehicle contained narcotics. If the officer has probable cause to believe that a vehicle contains contraband or evidence of crime, he may search the entire vehicle. However, if he only has probable cause to believe that a container found within the car after a limited search for that container contains contraband or evidence of a crime, he may only search the container.California v. Acevedo (1991), 500 U.S. 565, 573-580;United States v. Ross (1982), 456 U.S. 798; andUnited States v. Johns (1985), 469 U.S. 478. Therefore, we find that if an accredited drug dog alerts to the presence of drugs in a vehicle, the officer has probable cause to search the entire vehicle. Such a dog is trained to pick up the scent of narcotics and, hopefully, lead the handler directly to the source of the scent. However, many factors may prevent the dog from getting to that source. Therefore, the only practical rule is to permit a thorough search of the vehicle. Cf.United States v. Seals (C.A. 5, 1993), 987 F.2d 1102,1107, fn. 8, certiorari denied (1993), 510 U.S. 853 (which stated in dicta that since the evidence did not indicate whether the dog alerted only to the passenger compartment of the vehicle, the court assumed that this was the case.) The logic of our holding is especially manifested in this case where the dog alerted to the interior of the vehicle and the narcotics were found inside a knapsack and briefcase behind a tarp which separates the passenger compartment and trunk of the vehicle. The window was the only means by which the dog could pick up the narcotic scent. Furthermore, we find that once the trooper found the plastic bags in the console that he knew to be the type used to package narcotics for trafficking purposes, he had probable cause to continue the search of the entire car.
Accordingly, appellant's first assignment is found not well-taken.
In his second assignment of error, appellant argues that the troopers illegally impounded his vehicle to conduct a warrantless investigative search. We disagree.
Since the facts of the case support a warrantless search of the vehicle at the stop, they also support a search after the vehicle is moved to the patrol station. Chambers v. Maroney
(1970), 399 U.S. 42, 51-52; State v. Hopkins (June 24, 1992), Hamilton App. No. C-920038, unreported; State v.Napier (May 27, 1998), Medina App. No. 2671-M, unreported; and State v. Carpenter (Apr. 8, 1998), Medina App. No. 2667-M, unreported. The troopers in this case moved the vehicle three miles to the patrol post where the lighting conditions were better and the troopers could conduct the search without the fear of being struck by the turnpike traffic. The troopers did not exceed the scope of a reasonable warrantless search.
Accordingly, appellant's second assignment of error is not well-taken.
Having found that the trial court did not commit error prejudicial to appellant, the judgment of the Erie County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is hereby ordered to pay the court costs incurred on appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J.
 Melvin L. Resnick, J.
 Mark L. Pietrykowski, J.
CONCUR.