THE STATE OF OHIO, APPELLANT, *v.* GRIBBLE, APPELLEE.

[Cite as State v. Gribble (1970), 24 Ohio St. 2d 85.]

(No. 69-651—Decided November 18, 1970.)

86

*Mr. Fred V. Skok*, prosecuting attorney, and *Mr. Charles N. Delsantro, Jr.*, for appellant.

*Mr. Mark F. McChesney*, for appellee.

HERBERT, J. The question presented by this appeal is whether, in order to establish a prima facie case on a charge of violating paragraph (D) of R. C. 5577.04, the state must offer proof of the axle spacing on the alleged offending vehicle, and offer proof that the scales used in weighing such vehicle were compared and sealed in accordance with the requirements of R. C. 4513.33. Under the instant record, we find the question of venue to be of secondary concern.

R. C. 5577.04 provides, in part:

"* * *

"The weight of vehicle and load imposed upon the road surface by vehicles with pneumatic tires shall not exceed the following:

"* * *

"(D) By any three successive load-bearing axles designed to equalize the load between such axles and spaced so that each such axle of the three-axle group is more than four feet from the next axle in the three-axle group and so that the spacing between the first axle and the third axle of the three-axle group is no more than nine feet, forty-eight thousand pounds. * * *"

Appellant contends that all items other than the vehicle's weight are matters of defense. That is, appellant would have us hold that a prima facie case is made out solely upon a showing that the weight of the vehicle in question exceeds the limit set forth above.

In trying the case under this assumption, appellant's main evidence consisted of uncontroverted testimony that appellee's three-axle truck weighed 57,090 pounds. The record reveals that the patrolman who supervised the weighing neither measured nor knew the distance between the front axle and third axle of the three-axle unit.

This failure of proof was fatal to the appellant's case; for if the distance between the first and third axles of the three-axle group was more than nine feet there would be no violation of this subsection, notwithstanding the fact that the combined weight of the three load-bearing axles exceeded 48,000 pounds. As a matter of fact, under other provisions of law, and with proper axle-separation, appellee's truck weight would not have been illegal.

We are not here dealing with a case where a crime had been committed and it became incumbent upon the defendant to justify his act or face the prescribed sentence. In this case, the very essence of the offense entailed a combination of both weight and axle separation, and a failure to establish either was fatal to the presentment of a prima facie case. See *State* v. *Nutter* (1970), 22 Ohio St. 2d 116, 258 N. E. 2d 440; *State* v. *Miclau* (1957), 167 Ohio St. 38, 146 N. E. 2d 293; *State* v. *Winterich* (1952), 157 Ohio St. 414, 105 N. E. 2d 857. We note also that the record is silent upon the question of the type of tires on appellee's vehicle. (Cf. R. C. 5577.041)

We conclude further that in order to establish a prima facie case on a charge of vehicle overload it is also incumbent upon the state to prove that the scale used in weighing the vehicle had affixed to it the type of official seal customarily employed by municipal, county or state sealers in the performance of their duties under R. C. 4513.33, which provides in pertinent part:

"Any police officer having reason to believe that the weight of a vehicle and its load is unlawful may require the driver of said vehicle to stop and submit to a weighing of it by means of a compact, self-contained, portable, sealed scale specially adapted to determine the wheel loads of vehicles on highways * * *. *All scales used in determining the lawful weight of a vehicle and its load shall be annually compared by a municipal, county, or state sealer with the state standards * * * and such scales shall not be sealed if they do not conform to the state standards * * *.*" (Emphasis added.)

At the trial of the instant cause, the prosecutor asked the highway patrolman the following questions, designed to establish the status of the scales:

"Q. Now, is there any possibility of error in these scales?

"A. I don't see where there would be any. The scales are sealed and checked.

"Mr. McChesney: I object.

"The Court: The objection is sustained. The question and answer may go out.

"Q. Now, are these scales sealed and checked?

"Mr. McChesney: I object.

"The Court: Sustained.

"Q. Is the accuracy of the scales determined at any time?

"Mr. McChesney: Objection.

"The Court: Overruled. You may answer.

"A. To the best of my knowledge, and checking through the department, the scales were checked, and at the time that we used them.

"Mr. McChesney: I object to the answer. It is apparently hearsay.

"The Court: Sustained. The answer is stricken.

"Mr. McChesney: I asked that the answer go out, Your Honor.

"The Court: Yes.

"Q. Well, to your knowledge, has the accuracy been ascertained?

"A. Well, I saw on the scales that they were sealed.

"Q. And what does 'sealed' mean?

"A. To have a seal on them.

"Q. What does 'sealed' mean?

"Mr. McChesney: I object to that.

"The Court: He may tell what he saw.

"Mr. McChesney: That is right. When he asked what it means.

"The Court: Limit your answer to what you saw, Mr. Williams. What did you see on the scales?

"The Witness: I saw that the scales were sealed.

"The Court: Now, what do you mean by, 'sealed'?

"The Witness: They had a seal and a wire through them that they had been checked, Judge. That is the only thing I can tell you."

The foregoing testimony concerning the scale having been sealed is insufficient to establish what we consider to be the necessary identity of the seal involved. However, we agree with appellant that all that need be shown by the prosecution on this point is that the seal affixed to the scale is official and is of the type customarily used by the sealers enumerated in R. C. 4513.33. If the seal is as thus described, the law rebuttably presumes that the sealer performed his statutory duties in accordance with the requirements of that section. Evidence contrary to that presumption is a matter of defense. See *Lessee of Ward* v. *Barrows* (1853), 2 Ohio St. 242; *Lessee of Coombs* v. *Lane* (1854), 4 Ohio St. 112; *Ross* v. *Franko* (1942), 139 Ohio St. 395, 398, 40 N. E. 2d 664.

Upon the question of venue, it has long been our rule

that the venue of a crime need not be proved in express terms, provided it be established by all the facts and circumstances, beyond a reasonable doubt, that the crime was committed in the county and state alleged. *State* v. *Dickerson* (1907), 77 Ohio St. 34, 82 N. E. 969. Our search of the record convinces us that venue was properly established in this cause.

The judgment of the Court of Appeals is affirmed, but in accordance with and for the reasons stated in this opinion.

*Judgment affirmed.*

O'NEILL, C. J., SCHNEIDER, DUNCAN, CORRIGAN, STERN and LEACH, JJ., concur.