OPINION
Donald Combs appeals from his conviction and sentence for abduction, burglary, aggravated burglary, aggravated menacing and assault.
In the early morning hours of April 11, 1998, Donald Combs met James Nelson in a bar in Dayton. The two men began talking and drinking alcohol. Earlier in the evening Combs had smoked marijuana with a friend, and had taken either a prescription pain killer or a prescription sleeping pill. Combs and Nelson left the bar together and went to Nelson's apartment in the Bayberry Cove apartment complex in Sugarcreek Township, Greene County.
Combs and Nelson drank more alcohol and smoked marijuana at Nelson's apartment, and Nelson played some pornographic videotapes. This led to a suggestion of homosexual activity between the two men, although the record is conflicting as to who made the advances. Shortly thereafter, Combs held a Bible and two candles in the form of a cross in Nelson's face and said that he was the son of God and Nelson was the devil, a demon. Nelson left his apartment and drove to Centerville or Kettering, where he called Sugarcreek Township police to report Combs' bizarre behavior.
Catherine Ray, a home health care nurse, had been caring for one of her patients in the Bayberry Cove apartment complex. When Ms. Ray finished around 9:15 a.m., she walked out into the parking lot where she struck up a conversation with another woman. While the two women were talking, Combs emerged from Nelson's apartment, stumbling and mumbling to himself. Ms. Ray saw Combs approach and decided to leave. As she turned to walk to her car, Ms. Ray was confronted by Combs. Combs held a Bible and two candles in the form of a cross in Ray's face and said, "Where are you going, you demon?" Ray hurriedly walked to her car, got in, and locked the doors. Combs pursued Ray and attempted to get inside Ray's car on the passenger side. Combs pounded on the car door and screamed, "Let me in, you demon." As Ray began to drive away, Combs jumped onto her car and held on, eventually falling off. Ms. Ray was very frightened. She drove home and immediately called police.
Next, Combs entered an apartment occupied by Holli Terry and her three year old son, Matthew. Combs was holding a Bible and two candles forming a cross. When Terry told Combs to get out of her apartment, Combs told her he was "God's son." Terry was able to push Combs out the front door even though Combs resisted. In the process Terry sustained scratches to her arm. After Terry got Combs out of her apartment, she ran next door to her neighbors and called to them to call the police. Meanwhile, Combs re-entered Terry's apartment and shut the door. Realizing her son was inside the apartment alone with Combs, Terry quickly re-entered her apartment and pushed Combs out the door again. Terry then locked the door. Terry testified that this experience was very frightening.
By this time police had arrived on the scene. Sugarcreek Township Police Officer Michael Laravie encountered Combs as he walked between two of the apartment buildings. Combs had a large knife in his hand. Officer Laravie drew his weapon and shouted at Combs to stop and drop the knife. Combs ignored Officer Laravie's commands and continued walking. Laravie heard Combs saying, "Lord, protect me." Combs then opened the door to Benny Shepherd's apartment, entered, and closed the door.
Officer Laravie attempted to open the door to Shepherd's apartment but it was locked. Laravie then kicked the door open, whereupon he saw Combs holding a knife in one hand and a Bible in the other. Laravie backed out of the doorway and Combs walked over and slammed the door shut. Officer Laravie then kicked the door open again, at which time he saw Combs standing face to face with Benny Shepherd. Officer Laravie motioned for Shepherd to move away from Combs. Shepherd complied. Meanwhile, Combs walked over and shut the door again. Almost immediately Officer Laravie observed Shepherd escaping from his apartment through a bedroom window. Shepherd told Officer Laravie that no one else was inside except Combs. Officer Laravie decided to wait for back-up to arrive.
When Combs entered his apartment, Shepherd was in the bathroom. Shepherd emerged to discover Combs holding a Bible in one hand and a knife and meat fork in the sign of a cross in the other. Combs held the knife and fork just inches away from Shepherd's face and neck. Combs yelled at Shepherd that he was going to "Get the demons out of him." Shepherd was frightened that Combs was going to cut him. When Officer Laravie kicked the front door open and Combs went over to close it, Shepherd ran into his bedroom and escaped through the window.
The SWAT team from the Xenia police department arrived on the scene. Attempts to communicate with Combs, who remained inside Shepherd's apartment, were unsuccessful. Two times a large group of heavily armed officers forced opened the door to Shepherd's apartment by using a battering ram. Both times Combs walked over and slammed the door shut. The third time the officers forced open the door they rushed Combs, knocking him to the ground. Combs was subdued and transported to Greene Memorial Hospital.
Combs was examined at the hospital. He was alert, oriented, and cooperated with the doctor and nurses. Combs did not exhibit any bizarre, irrational behavior. A blood test revealed the presence of marijuana and opiates in Combs' system. After being treated for superficial injuries Combs was released to the waiting police officers for transport to the jail.
When police transported Combs to the jail, Combs became combative and a physical struggle ensued. Although handcuffed, Combs hit Det. Chalecki in the chest with both hands, knocking him to the ground. Det. Chalecki suffered minor abrasions. Combs continued to refer to the police who were taking him to jail as "the devil" and telling them to "kill him."
Once at the jail, Combs continued to act out inappropriately and was put in an isolation cell, a restraint chair, and a suicide smock. Because of his bizarre behavior in jail, Combs was referred to Dr. Wee, a psychiatrist at Twin Valley Psychiatric Center in Dayton, Ohio. Dr. Wee concluded that Combs' behavior was the result of his inability to cope with his emotions and handle his stressful situation, which included the criminal charges against him and his fear of being raped in jail. Dr. Wee diagnosed Combs as having adjustment disorder with depression, not a mental illness.
Donald Combs was subsequently indicted as follows: one count of Abduction, R.C. 2905.02(A) (2), with respect to Catherine Ray; one count of Aggravated Burglary, R.C. 2911.11(A) (1), with respect to Holli Terry; one count of Aggravated Burglary, R.C.2911.11(A) (2), and one count of felonious assault, R.C.2903.11(A) (2), with respect to Benny Shepherd; and one count of Assault, R.C. 2903.13, with respect to Det. Chalecki. Combs filed his plea of not guilty by reason of insanity and sanity evaluations were ordered by the trial court. Combs subsequently waived a jury trial and the matter was tried to the court.
Following the trial the court concluded that Combs had not proved the defense of insanity by a preponderance of the evidence. With respect to the offenses against Catherine Ray, Benny Shepherd, and Det. Chalecki, the court found Combs guilty of Abduction, Aggravated Burglary, and Assault as charged. With respect to Holli Terry, the court found Combs not guilty of Aggravated Burglary, but guilty of the lesser included offense of Burglary. With respect to Benny Shepherd, the court found Combs not guilty of Felonious Assault but guilty of the lesser included offense of Aggravated Menacing. The trial court subsequently imposed a total aggregate sentence of nine years imprisonment on Combs for those offenses.
From his conviction and sentence, Combs has timely appealed to this court.
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY CONVICTING THE APPELLANT OF ABDUCTION BECAUSE:
 A. THERE WAS INSUFFICIENT EVIDENCE PRESENTED ON THE ELEMENT OF INTENT TO RESTRAIN THE LIBERTY OF ANOTHER;
 B. THERE WAS INSUFFICIENT EVIDENCE PRESENTED ON THE ELEMENT OF RESTRAIN THE LIBERTY OF ANOTHER PERSON BY FORCE OR THREAT UNDER CIRCUMSTANCES CREATING A RISK OF PHYSICAL HARM TO THE VICTIM OR PLACING THE OTHER PERSON IN FEAR.
 THUS, THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins, (1997), 78 Ohio St.3d 380. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991),61 Ohio St.3d 259:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Donald Combs was found guilty of Abduction in violation of R.C. 2905.02(A) (2), which states:
No person, without privilege to do so, shall knowingly
* * *
 By force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear.
"Knowingly" is defined in R.C. 2901.22(B):
 A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
Combs argues that the State failed to demonstrate that he restrained Catherine Ray of her liberty. In that regard, Combs points out that he did not physically touch Ms. Ray or exert any physical force upon or against her person. Moreover, Combs had no weapon and he did not threaten Ms. Ray in any manner.
R.C. 2905.02(A) (2) employs the term "liberty" in a functional sense, not a constitutional sense. Nevertheless, in either sense, the term liberty connotes the power of the will to follow the dictates of its unrestricted choice and to direct the external acts of the individual without restraint, coercion, or control from other persons. See Booth v. Illinois (1902), 184 U.S. 425;Munn v. Illinois (1877), 94 U.S. 113.
R.C. 2905.02(A) (2) prohibits conduct whereby the actor knowingly restrains the liberty of another person. The termrestrain implies a limitation in some form on progress or advancement which otherwise might occur. As it is used in R.C.2905.02(A) (2), it requires proof that the victim was compelled to remain where he does not wish to remain or go where he does not wish to go. See State v. Williams (1991), 75 Ohio App.3d 293.
The evidence presented by the State demonstrates that Ms. Ray was standing in the parking lot of the apartment complex talking to another home health care worker when she observed Combs come out of Nelson's apartment. Combs was stumbling and mumbling. Combs walked over to Ms. Ray and menaced her by holding two candles in the sign of a cross and a Bible in her face. Combs asked Ms. Ray, "Where are you going, you demon?" Ray hurried over to her car, got inside, and locked the doors. Combs attempted to enter Ray's car on the passenger side, pounding on the door and screaming, "Let me in, you demon." As Ray started to drive away, Combs jumped onto the car and held on, yelling, "Let me in the car, you demon." Combs fell off the car as Ray drove out of the parking lot.
Combs' conduct was threatening and doubtless placed Catherine Ray in fear. However, though Ray testified that Combs' conduct caused her to terminate her conversation with the other health care worker and depart more quickly than she otherwise would have, we do not agree with the State that Combs thereby restrained Ray's liberty or her freedom to remain where she was. Ray's decision to walk to her car and drive away was the product of her own choice, not any compulsion that Combs exerted.
Combs' attempts to enter Ray's car and then to jump onto her car and hold on as Ray drove away does constitute an effort to stop Ray's progress and limit her freedom of movement. Because Combs' efforts proved unsuccessful, his conduct was insufficient to sustain a conviction for abduction, which requires actual restraint of Ray's liberty. Combs' actions nevertheless amount to conduct which, if successful, would have resulted in the completed offense of abduction. Therefore they constitute an attempt to commit that offense per R.C. 2923.02(A).
Because the evidence is sufficient to prove an attempted abduction, we may reverse and vacate Combs' conviction for abduction and remand the case to the trial court to enter a conviction for attempted abduction, which is punishable as the next lesser degree of the offense charged per division (E) of R.C.2923.02. See State v. Pillow (May 23, 1997), Greene App. No. 96-CA-158, unreported: Katz Giannelli, Criminal Law, Section 93.8; 29 Ohio Jurisprudence 3d, Criminal Law, Section 2932. That relief will be ordered.
Combs additionally argues that the State failed to prove that he acted with the required culpable mental state, i.e., "knowingly." According to Combs, as a result of his voluntary intoxication from drinking alcohol and smoking marijuana on the night in question, he was not capable of acting "knowingly."State v. Gonzalez (July 10, 1998), Clark App. No. 96CA124, unreported; State v. Fox (1981), 68 Ohio St.2d 53.
The evidence presented at trial demonstrates that Combs drank alcohol and smoked marijuana before engaging in the conduct that gives rise to these offenses. After he was transported to the hospital immediately following his apprehension, however, Combs was alert and oriented and cooperated with hospital personnel. When Combs later discovered that police were taking him from the hospital to jail, he became combative and his behavior again became irrational and bizarre.
Combs did not present any evidence at trial to demonstrate that as a result of his voluntary intoxication he was incapable of engaging in knowing conduct, and he did not assert that claim. Even assuming arguendo that the evidence presented by the State was sufficient for the trier of fact to conclude that Combs was intoxicated at the time of this offense, intoxication alone is not enough. The evidence in this record does not demonstrate that Combs was so intoxicated as to be mentally incapable of knowing conduct, that is, of being aware that his conduct would probably cause a certain result.
Viewing the evidence presented in this case in a light most favorable to the State, as we are required to do, we conclude that a rational trier of fact could find all of the essential elements of attempted abduction, but not abduction, to have been proved by the State beyond a reasonable doubt.
As to Combs' conviction for abduction, the judgment of the trial court will be reversed and the matter remanded to the trial court with instructions to enter a finding of guilty of attempted abduction and impose a sentence for that offense.
Combs' first assignment of error is sustained in part and overruled in part.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY CONVICTING THE APPELLANT OF AGGRAVATED BURGLARY BECAUSE: THERE WAS INSUFFICIENT EVIDENCE PRESENTED ON THE ELEMENT OF INTENT TO COMMIT AN OFFENSE AT THE TIME OF ENTRY; THUS THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
This assignment of error pertains to Combs' conviction for the Aggravated Burglary of Benny Shepherd's apartment set forth in count three of the indictment.
R.C. 2911.11(A) (2) states:
 No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
* * *
 The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.
Combs argues that the State failed to prove that he formed any purpose or intent to commit some criminal offense inside Benny Shepherd's apartment prior to trespassing in that apartment. Combs concedes that he did trespass in Shepherd's apartment. According to Shepherd's testimony, when he came out of his bathroom, Combs was standing inside his apartment. Combs had knife and a meat fork in one hand which he held in the sign of a cross, and a Bible in the other hand. Combs approached Shepherd and held the knife and fork just inches away from Shepherd's face and neck while yelling at Shepherd that he was going to get the demons out of him. Shepherd was afraid that Combs was going to cut him with the knife.
It is clear from this evidence that once inside Shepherd's apartment, Combs committed the offense of Aggravated Menacing, R.C. 2903.21. The issue is whether the State was required to prove that Combs intended to commit that offense, or some other offense, before he entered Shepherd's apartment. The trial court, sitting as the trier of fact in this case, found that when Combs first entered Shepherd's apartment he already had the knife and the intention of causing another person to believe that he would cause them serious physical harm. R.C. 2903.21.
Some appellate districts adhere to the view that for purposes of the aggravated burglary statute the purpose or intent to commit a criminal offense must be formed prior to or contemporaneous with the trespass or initial entry. State v. Lewis (1992), 78 Ohio App.3d 518; State v. Flowers (1984), 16 Ohio App.3d 313. Other appellate districts hold that the purpose or intent to commit an offense may be formed after the initial entry or trespass is complete, so long as the trespass is still continuing. State v.Fontes (November 11, 1998), Union App. No. 14-97-45, unreported;State v. Thomas (December 20, 1995), Cuyahoga App. No. 68313, unreported; State v. Jones (1981), 2 Ohio App.3d 20. We believe this latter view represents the better reasoned position. We do note that this issue is presently pending before the Ohio Supreme Court for decision. State v. Fontes, Ohio Supreme Court Case No. 99-23.
R.C. 2911.11, prohibits a trespass that is committed with a purpose or intent to commit some other criminal offense during the course of that trespass. By its very language, R.C. 2911.21 makes trespassing a continuing offense, one that continues so long as the defendant remains on the land or premises of another which he has entered without privilege. The statute does not require that this purpose or intent be formed before the trespass takes place. Thus, so long as the purpose or intent to commit some crime is formed before or during the course of the trespass, that is sufficient in our opinion to demonstrate a violation of R.C.2911.11. Jones, supra; Thomas, supra.
Viewing the evidence presented in a light most favorable to the State, we conclude that a rational trier of fact could find all of the essential elements of aggravated burglary proven beyond a reasonable doubt.
Combs' second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY CONVICTING THE APPELLANT OF ASSAULT BECAUSE THE STATE FAILED TO PROVE VENUE.
Combs asserts that the evidence presented at trial pertaining to his assault upon Det. Chalecki at Greene Memorial Hospital is legally insufficient because the State failed to prove venue.
The testimony presented at trial demonstrates that after Combs was taken into custody at the Bayberry Cove apartment complex, he was immediately transported to the emergency room at Greene Memorial Hospital where he was examined by Dr. Tiefert. When police subsequently attempted to transport Combs from that hospital to the Greene County Jail, Combs became physically combative and struck Det. Chaleki in the chest with both hands, even though Combs was handcuffed at the time.
While Combs is correct in asserting that there is no testimony that Greene Memorial Hospital is located in Xenia, Greene County, Ohio, the venue of a crime need not be proved in express terms provided it can be established by the totality of the facts and circumstances. State v. Gribble (1970), 24 Ohio St.2d 85.
Evid.R. 201 governs the taking of judicial notice and provides in part:
 (A) Scope of rule. This rule governs only judicial notice of adjudicative facts; i.e., the facts of the case.
 (B) Kinds of facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
 (C) When discretionary. A court may take judicial notice, whether requested or not.
It cannot be reasonably disputed that Greene Memorial Hospital is located in the City of Xenia, Greene County, Ohio. Accordingly, the trial court was authorized by Evid.R. 201 to take judicial notice of that fact at any stage of the trial proceedings. Venue was sufficiently established for purposes of Combs' assault conviction.
Combs' third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR THE APPELLANT WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AS WELL AS ARTICLE I SECTION 10 OF THE OHIO CONSTITUTION WHEN: COUNSEL WAS DEFICIENT IN HIS PERFORMANCE AND BUT FOR THE DEFICIENCY, THERE IS A REASONABLE PROBABILITY THAT THE RESULT OF THE TRIAL WOULD HAVE BEEN DIFFERENT.
In Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674, the United States Supreme Court held that ineffective assistance of trial counsel violates a criminal defendant's Sixth Amendment right to counsel, and it set the standard for determining whether a counsel's assistance was constitutionally ineffective. This standard, subsequently adopted by Ohio in State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, requires a defendant to satisfy a two-part test.
First, the defendant must demonstrate that his counsel's representation was deficient by showing that counsel's performance fell below an objective standard of reasonable representation.Id., at 141, 538 N.E.2d 373.
Second, the defendant must prove that his trial counsel's deficient performance resulted in prejudice to the defendant.Id., at 142, 538 N.E.2d. To prove prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the trial would have been different. Id. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Strickland, supra.
The United States Supreme Court has stated that a "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . ."Strickland, supra, at 689. This court has stated that, under Ohio law, a licensed attorney is presumed competent. State v.Estes (May 31, 1996), Montgomery App. No. 15419, following, Vaughnv. Maxwell (1965), 2 Ohio St.2d 299, 301, 209 N.E.2d 164. Further, we have held that "counsel's performance will not be deemed ineffective unless and until" the defendant has met the requirements of Strickland and Bradley. Estes, at 3. In reviewing a claim of ineffective assistance of counsel, a court must consider the totality of the evidence. Bradley, supra.
Combs asserts that his trial counsel's performance was constitutionally deficient in four respects. First, Combs complains about defense counsel's failure to challenge whether he was intoxicated at the time of these offenses, and if so to what extent. Dr. Stookey, a psychologist who testified on behalf of the State, opined that Combs was not legally insane at the time these offenses occurred because while Combs probably did not know right from wrong, that was not due to any mental disease or defect but rather was the result of Combs' inability to cope with stress and his voluntary intoxication. According to Combs, defense counsel should have rebutted Dr. Stookey's opinion by challenging the level of Combs' intoxication.
The evidence presented at trial pertaining to Combs' alcohol and drug use on the night in question does not lend itself to a credible argument that Combs was not seriously intoxicated. The evidence demonstrates that Combs was consuming alcohol at the bar where he met Nelson. When the two men went to Nelson's apartment, Combs consumed one-fourth of a fifth of gin, drank two forty-ounce beers, and smoked a marijuana cigarette. Also, Combs reported to one psychologist who examined him that prior to meeting Nelson he had smoked marijuana and taken one pill, either a prescription pain killer or a prescription sleeping pill. At the hospital immediately following these offenses, Combs tested positive for marijuana and opiates. Various police officers testified that Combs' belligerent and bizarre behavior was consistent with people who are under the influence of alcohol and/or drugs.
Given this evidence regarding Combs' alcohol and drug use, defense counsel could have reasonably chosen as a matter of sound trial tactics not to challenge the State's position as to Combs' sanity by arguing that Combs was not intoxicated. Instead, the defense took a more reasonable approach and presented its own expert, Dr. Cherry, who testified that he disagreed with the State's expert that Combs' irrational behavior was the product of voluntary intoxication because Combs' behavior continued for weeks after these offenses were committed. Dr. Cherry opined that Combs, who suffers from bi-polar disorder, went into a psychotic state when Nelson made homosexual advances toward him because it reawakened Combs' past recollection of sexual abuse he suffered as a child and triggered a post-traumatic stress reaction.
Defense counsel was entitled to wide latitude in deciding how best to rebut the State's position with respect to Combs' sanity. Reasonable tactical decisions do not constitute deficient performance by counsel and ineffective assistance. State v.Brooks (1996), 75 Ohio St.3d 148. Even debatable trial tactics or the fact that another, better strategy was available, does not amount to deficient performance. State v. Clayton (1980),62 Ohio St.2d 145.
Combs next complains about defense counsel's failure to argue that Combs' intoxication may not have been completely voluntary because he may have been slipped some drugs without his knowledge. There is no evidentiary support in the trial record for this argument. Defense counsel does not perform in a deficient manner by failing to present arguments which are based not upon facts but rather upon mere speculation.
Combs also asserts that defense counsel performed deficiently by failing to argue that as a result of his voluntary intoxication Combs was incapable of acting "knowingly," the culpable mental state required for the abduction, assault, and aggravated menacing offenses. Had defense counsel made this argument, as Combs claims he should have, that would have supported the State's position that Combs was not insane because his inability to distinguish right from wrong was not the product of some mental disease or defect but rather was the result of his own voluntary intoxication. On the other hand, the chances of achieving an acquittal with the argument that because of his own voluntary intoxication Combs was mentally incapable of acting knowingly is questionable at best.
This record contains substantial evidence demonstrating that shortly after Combs committed these offenses he was alert, oriented, and cooperative with the hospital staff who treated him. Defense counsel's decision not to argue that Combs was incapable of acting knowingly because of his intoxication was a reasonable tactical decision which does not constitute deficient performance.Brooks, supra; Clayton, supra.
Finally, Combs argues that his defense counsel's performance was deficient because counsel failed to demonstrate that the alleged homosexual advances made by Nelson toward Combs triggered Combs' subsequent irrational behavior. That is precisely, however, what the defense expert, Dr. Cherry, testified about.
Combs reported to psychologists who examined him that he was sexually abused by family members as a child. He also expressed a fear of being in jail because he might be raped. Dr. Cherry testified that when Nelson made homosexual advances toward Combs, that reawakened Combs' memory of his previous sexual abuse and triggered a manic stress reaction which resulted in Combs' irrational behavior. Dr. Cherry opined that Combs' active psychotic state that he was in at the time he committed these offenses was triggered by his perception that Nelson was going to sexually assault him and he felt very threatened by that. No deficient performance by defense counsel has been demonstrated.
Combs' fourth assignment of error is overruled.
 Conclusion
Having sustained Defendant-Appellant's first assignment of error, in part, we will reverse his conviction for Abduction and remand the case to the trial court with instructions to enter a judgment of conviction for Attempted Abduction and to sentence Combs for that offense pursuant to law. Combs' assignments of error are otherwise overruled and his other convictions are affirmed.
WOLFF, J. and KOEHLER, J., concur.
(Hon. RICHARD NORMAN KOEHLER, Retired from the Court of Appeals, Twelfth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)
Copies mailed to:
Robert K. Hendrix, Esq.
Thomas George Edward Mathewson, Esq.
HON. THOMAS M. ROSE