OPINION
Defendant-appellant, John Hatt, appeals his conviction in the Middletown Municipal Court for menacing by stalking. The decision of the trial court is affirmed.
Appellant was arrested and charged with menacing by stalking. At the conclusion of a bench trial, the trial judge found appellant guilty of the offense charged. Appellant appeals, raising one assignment of error:
 THE TRIAL COURT ERRED IN CONVICTING THE DEFENDANT OF MENACING BY STALKING.
In his assignment of error, appellant argues that the state failed to prove beyond a reasonable doubt that he was guilty of the offense of menacing by stalking. Appellant contends that the evidence failed to show that he threatened to physically harm the victim or caused her mental distress. In addition, appellant alleges that the state failed to show that the commission of the crime occurred within the jurisdiction of the city of Middletown.
A reviewing court will not reverse a judgment as against the manifest weight of the evidence in a bench trial where the trial court could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. State v. Eskridge (1988),38 Ohio St.3d 56, 59. The standard for reversal based upon the manifest weight of the evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
Appellant was convicted of menacing by stalking, a violation of Middletown Codified Ordinance 636.045, which states:
 Prohibited Conduct No person, by engaging in a pattern of conduct, shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.
As used in this section:
 "Pattern of conduct" means two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents.
 "Mental distress" means any mental illness or condition that involves some temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment.
(ORC 2903.211)
At trial, Shana Colwell testified that she ended a six-year relationship with appellant in October 1997, and since that time, she has endured constant harassment. Colwell stated that she received numerous phone calls and letters at her home and at her place of employment. She testified that she received several phone calls at her home on a daily basis and has received over twenty phone calls in a single day. Initially, appellant called to ask Colwell to continue their relationship. After a period of time, the caller no longer identified himself. These calls continued even after Colwell's phone number was changed. Colwell also received unsolicited mailings about plastic surgery, AIDS (acquired immunity deficiency syndrome), and sexually transmitted diseases at her place of work.
Colwell testified that unsolicited services were frequently sent to her home. She received numerous unwanted magazine subscriptions with bills for payment. She testified that delivery services came to her home for pick-ups. Taxicabs arrived at her home and the drivers demanded payment for their service. Tow trucks attempted to tow her vehicle away. A locksmith was also sent to Colwell's residence. On more than one occasion, representatives from a local gas company visited her in the early hours of the morning in response to alleged gas leaks that she did not report. Colwell's roommate testified that pizza delivery stopped at their home several times a week.
According to Colwell, the harassment began on the day that she ended her relationship with appellant and stopped months later on the day that she filed a police report. Colwell testified that appellant had previously told her that when he was angry with someone, he would place that person on a mailing list. Appellant also told Colwell that when he was angry with co-workers it was "real simple just to have someone's phone turned off, to have someone's electric turned off * * * just to aggravate these people."
Colwell testified that among the mailings she received were a card and letter that were written in appellant's handwriting. The letter contains the statement, "I'm so sorry if I bother or harrassed [sic] you be [sic] calling you all the time[.]" Colwell also received photographs of appellant's two sons in the mail.
Since the end of his relationship with Colwell, appellant has attempted suicide four times. One of these attempts occurred at a bowling alley that is located within one block of Colwell's home. Colwell has received a sympathy card stating that appellant was dead. Detective Riggs of the Middletown Police Department testified that appellant admitted to sending Colwell a notice of his death.
Colwell testified that after her first attempt to end her relationship with appellant in April 1997, there was a domestic dispute which resulted in injuries to her. Officer Mark Quinn of the Union Township Police Department testified that Colwell made a report of domestic violence at that time.
Colwell testified that she suffers from multiple sclerosis. She explained that she is experiencing problems at work caused by stress from appellant's actions. She testified:
 [I]n my line of work, it is necessary that I'm there daily during critical hours of the day and a lot of my stress over these situations at home and work have cost me some time off of work for medical reasons [be]cause stress and nervousness and being afraid and all those together are enhance the symptoms of my medical state.
Colwell is especially upset that this harassment has occurred at her home, where she resides with her ten-year old daughter. Colwell testified, "to have all of these people and businesses coming to my home for things * * * is just not a safe atmosphere." Colwell testified that some of the letters she received were mailed and some were dropped off at her doorstep. Colwell testified that appellant has come to her home himself "in a very distraught, crazed, begging type of manner." Colwell testified that she is afraid of appellant because she "know[s] what he's capable of."
Reviewing the record and weighing the evidence and the reasonable inferences, we find that the trial court could reasonably conclude from substantial evidence that the state has proved beyond a reasonable doubt that appellant has committed menacing by stalking. Appellant has invaded Colwell's peace of mind to the detriment of her health and work performance. Appellant has attempted to take his own life several times and has physically harmed Colwell in the past. There is evidence from which one could conclude beyond a reasonable doubt that appellant engaged in a pattern of conduct that brought Colwell distress and led her to believe that appellant would physically harm her. Therefore, we find that the conviction is supported by the manifest weight of the evidence.
Appellant also claims that the state failed to prove venue. "Venue is not a material element of any offense charged. The elements of the offense charged and the venue of the matter are separate and distinct."State v. Draggo (1981), 65 Ohio St.2d 88, 90. Nevertheless, venue is a fact that must be proved at trial unless waived. Id. Venue is established if, from all of the facts and circumstances in the case, it is shown that the offense was committed in the county and state named in the indictment or other charging instrument. State v. Gribble (1970), 24 Ohio St.2d 85,90. To establish venue in a municipal court case, it must be shown that the offense was committed in the city and state named in the charging instrument.
A review of the record reveals that there was evidence to show that the offense was committed within the city of Middletown. Colwell testified that she lives at Bavarian Woods Apartments. John Van Rijswijck testified that he lives with Colwell in Middletown at "103 Bavarian Drive, Apartment F." This is the address written on the mailings sent to Colwell's home that were admitted into evidence, which include unsolicited magazine subscriptions and letters from appellant. We find that the facts and circumstances of this case demonstrate that appellant committed the offense in the city of Middletown. The assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.