OPINION.
{¶ 1} In response to complaints about defendant-appellant Jennifer Dute's website, police initiated an undercover investigation. On four separate occasions, police officers posing as customers used forms available on Dute's website to order videotapes that featured Dute engaged in various sexual acts with multiple partners. Police mailed the order forms and money orders to "Jennifer" at a post-office box in Amelia, Ohio. The videotapes were delivered through the mail to undercover officers at two "covert" addresses, 11787 Hamilton-Cleves Highway and 7699 Harrison Pike.
{¶ 2} Dute and her husband were charged with four counts of pandering obscenity in violation of R.C. 2907.32(A)(2), felonies of the fifth degree. Specifically, the indictment charged that the Dutes sold or delivered obscene videotapes entitled "Jennifer #2," "Jennifer #3," "Jennifer #6," and "Jennifer #7," in Hamilton County. Following a jury trial, Dute was convicted as charged. Her husband was acquitted. Dute was sentenced to one year's incarceration on each count, to be served concurrently.
{¶ 3} Dute's first assignment of error alleges that the trial court erred in denying her motion to introduce comparable materials. Prior to trial, Dute filed a motion to introduce comparable materials consisting of three videotapes found not to be obscene in State v.Metcalf, Hamilton C.P. No. B-0009955. The trial court denied Dute's motion and precluded her from introducing the comparable materials at trial. Defense counsel proffered the videotapes, along with the transcript of the Metcalf trial for the record on appeal. Dute's stated reason for proffering the Metcalf transcript was to show that Metcalf had been acquitted because the jury had found that the videotapes were not obscene, and not for any other reason.
{¶ 4} The test to determine whether material is obscene was set forth by the United States Supreme Court in Miller v. California (1973),413 U.S. 15, 93 S.Ct. 2607: "the basic guidelines for the trier of fact must be: (1) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest; (2) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (3) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value."
{¶ 5} The defendant in an obscenity case must be allowed to introduce competent, relevant evidence bearing on the issues to be tried. See Hamling v. United States (1974), 418 U.S. 87, 94 S.Ct. 2887. It is error for a trial court in an obscenity case to deny or unreasonably curtail a defendant's right to introduce into evidence competent and non-repetitive testimony or exhibits that directly relate to or bear upon the absence of any or all of the elements of the Miller
obscenity test. See State ex rel. Leis v. William S. Barton Co., Inc.
(1975), 45 Ohio App.2d 249, 344 N.E.2d 342; State v. Abrams (July 8, 1981), 1st Dist. No. C-800410.
{¶ 6} The Metcalf videotapes, having been found by a Hamilton County jury not to be obscene, arguably demonstrated contemporary community standards. A trial court may not unreasonably curtail the right of the defendant in an obscenity case to introduce competent, non-cumulative evidence bearing upon the Miller test elements, including evidence of community standards. See State v. Huss (Mar. 21, 1979), 1st Dist. No. C-780361.
{¶ 7} In State v. Hustler Magazine (Apr. 4, 1979), 1st Dist. No. C-77101, the trial court excluded from evidence all magazines that the defendant had offered as "comparable literature" sold in Hamilton County. We held that the "trial court abused its discretion in excluding all evidence which directly related to or had a bearing on community standards."
{¶ 8} We have examined the proffered materials, and we hold that the videotape entitled "Gangland 17" is sufficiently similar to the "Jennifer" videotapes to be considered a comparable material. We hold that the trial court erred in excluding the "Gangland 17" videotape from evidence because it was comparable to the "Jennifer" videotapes, and because it was relevant to the issue of community standards since it had been found not to be obscene in a prior proceeding by a Hamilton County jury. The trial court's refusal to admit the "Gangland 17" videotape denied Dute the right to introduce relevant evidence that directly related to the community-standards element of the Miller test.
{¶ 9} We hold that the other proffered videotapes are not sufficiently similar to the "Jennifer" videotapes to be considered comparable materials.
{¶ 10} Dute also alleges that the trial court erred in refusing to admit a May 2001 article from the Cincinnati Enquirer entitled "Home is Where the Porn Is." Dute argues that the newspaper article was relevant because it addressed the acceptability of adult material in Hamilton County, as well as the consumption of sexually explicit videotapes by Hamilton County residents through the mail and over the Internet. Dute proffered the article into the record.
{¶ 11} We have examined the article, and we hold that the trial court did not abuse its discretion in refusing to admit it into evidence. Dute failed to lay a proper foundation for the admission of the article. The trial court could have found that the article was not relevant because it did not deal with the community acceptance of the material at issue in Dute's trial, and because there was no way to determine whether the materials to which the article referred were comparable to the "Jennifer" videotapes. Further, the article contained quotes from various individuals, including Dute's counsel, who opined that he did not "think the concept of a local community standard is really valid anymore."
{¶ 12} The first assignment of error is sustained as to the "Gangland 17" videotape and overruled as to the other proffered videotapes and the newspaper article.
{¶ 13} Dute's second assignment of error alleges that the trial court erred in denying her motion for a mistrial when the jury was exposed to "prejudicial extrajudicial statements."
{¶ 14} Dute filed a motion in limine to prevent the prosecution from introducing evidence of a prior pandering-obscenity charge that had been brought against Dute. The record reveals that Dute had been charged with pandering obscenity in 1999. The charges against Dute individually had been dismissed when, pursuant to a plea bargain, a fictitious corporate entity, AJ Specialties, had been permitted to plead guilty. The record reveals that the trial court determined that the 1999 charge was inadmissible, apparently finding that evidence of the prior charge was irrelevant and highly prejudicial.
{¶ 15} On the second day of trial, various local media reported that Dute and her husband had been charged with and/or convicted of pandering obscenity pursuant to the 1999 charges. The media reports were brought to the trial court's attention. Dute's counsel submitted the articles themselves, as well as affidavits from individuals who had read the newspaper stories and had seen television news accounts.
{¶ 16} The jurors had previously been instructed that they were not to attempt to obtain any information about the case outside the courtroom, but they had not been instructed that they were not to view, read or listen to any media reports about the case. The trial court polled the jury to determine whether any of the jurors had seen or heard the news reports. Seven of the twelve jurors indicated that they had seen or heard the media reports. The trial court addressed the jury, "What I'm going to ask all of you that raised your hand at this point, is there anything that you observed from the TV viewing, from listening on the radio, or from watching it or seeing it in the newspaper or wherever you came into contact with it, that would cause you any particular problems with this case with continuing to serve as a juror? * * * Is there anybody that now feels that they have got a particular problem, that they saw anything that caused them a problem, made them make up their mind, change their mind, anything?" (T.p. 240-241.) The court then instructed the jurors that they were not to "read, view, or listen to any report" about the case in the media.
{¶ 17} At a sidebar conference, Dute's counsel requested that the trial court examine the jurors individually to determine what they had read or heard concerning the case, and whether they could still be fair and impartial. In the alternative, Dute's counsel requested a mistrial. The trial court refused to conduct a voir dire of the jurors and overruled the motion for a mistrial.
{¶ 18} In Marshall v. United States (1959), 360 U.S. 310,79 S.Ct. 1171, the defendant was charged with unlawfully dispensing a prescription drug resulting in misbranding. The trial court refused to allow the prosecution to introduce evidence that the defendant had previously been convicted of practicing medicine without a license. A "substantial number" of jurors read newspaper articles containing facts about the defendant's prior conviction along with other unfavorable information. The United States Supreme Court held that the defendant's conviction had to be reversed because the jury was exposed to information that the trial judge had ruled inadmissible because of its prejudicial effect. The Court stated that the prejudicial effect was "almost certain to be as great when that evidence reached the jury through news accounts as when it is a part of the prosecution's case." Id at 312-313,79 S.Ct. 1171. The Marshall court stated that it was granting a new trial "in the exercise of [its] supervisory power to formulate and apply proper standards for enforcement of the criminal law in federal courts."
{¶ 19} In State v. Doll (1970), 24 Ohio St.2d 130, 265 N.E.2d 279, the Ohio Supreme Court held that the inflammatory effect of evidence tending to show that the defendant had committed another offense was generally recognized as so prejudicial that a reversal was required.
{¶ 20} The Ohio Supreme Court, in State v. Craven (1973),35 Ohio St.2d 18, 298 N.E.2d 547, relied on Marshall and Doll in holding that where a trial court had ruled that the defendant's prior felony conviction was inadmissible and the jury was made aware of the conviction through newspaper reports, the prejudice could not be cured by judicially solicited assurances from the jurors that they were not influenced by the information.
{¶ 21} Where the jury becomes aware of "highly prejudicial" evidence of the defendant's past criminal behavior through news media coverage, it is per se prejudicial to the defendant. See State v.Kirkland (Apr. 9, 1998), 10th Dist. No. 97APA07-873; Marshall v.United States, supra; State v. Doll, supra; State v. Craven, supra.
{¶ 22} In Murphy v. Florida (1975), 421 U.S. 794, 95 S.Ct. 2031, a case involving pretrial publicity and the initial selection of the jury, the United States Supreme Court stated that its Marshall decision was expressly based upon its supervisory power to formulate and apply proper standards for enforcement of the criminal law in the federal courts. The Court held that, therefore, Marshall was not a constitutional ruling applicable to the states through the Fourteenth Amendment. The Murphy
court held that the constitutional standard of fairness required that the defendant's case be tried before an impartial jury, and that "a juror's assurances that he is equal to [the] task cannot be dispositive" of the rights of the accused. The Court noted that the voir dire of the jurors indicated no prejudice toward the defendant or partiality that could not be put aside. The Murphy court held that, under the totality of the circumstances, no prejudice to the defendant was demonstrated.
{¶ 23} We applied the Craven standard in State v. Bess (Nov. 12, 1986), 1st Dist No. C-850895. In Bess, we stated that the Craven court had "observed that the fact that jurors saw newspaper articles, thus becoming aware of other inflammatory evidence improperly, could not be cured by judicially solicited assurances that each was not influenced thereby."
{¶ 24} In Bess, the defendant was convicted of aggravated murder and aggravated robbery. On the second day of trial, an article pertaining to the case appeared in the Cincinnati Enquirer. Two jurors had seen the article. One juror had read the headline, but had not read the article. The other juror had read the article. The trial court conducted a voir dire of the second juror, which revealed that he had not read anything about the defendant's alleged criminal past, that he had not discussed the article with any other juror, and that the article would not affect his ability to be impartial. We held that a mistrial was not required because the first juror had not read the article, and because the second juror's "lack of recall rendered him as if he had not seen the article at all."
{¶ 25} In the instant case, the trial court had determined that evidence of the prior charges of pandering obscenity was inadmissible at trial. The jurors were not initially instructed that they were not to view, read or listen to any media reports concerning the Dute case. Seven of the twelve jurors indicated that they had read or heard media stories about the case. The stories erroneously reported that Dute and her husband had previously been charged with and/or convicted of pandering obscenity, the same crime for which they were standing trial. The information was "highly prejudicial." The trial court failed to conduct a meaningful voir dire of the jurors who had indicated that they had seen or read the media reports. We hold that under the Marshall, Doll andCraven per se prejudice test, or under the Murphy
totality-of-the-circumstances test, the trial court erred in refusing to grant a mistrial. The second assignment of error is sustained.
{¶ 26} The third assignment of error essentially alleges that the trial court erred in entering a judgment of conviction because the state had failed to prove venue. Dute argues that the evidence was insufficient to prove that 11787 Hamilton-Cleves Highway and 7699 Harrison Pike were located within Hamilton County.
{¶ 27} Venue must be proved beyond a reasonable doubt in a criminal prosecution. See State v. Headley (1983), 6 Ohio St.3d 475,453 N.E.2d 716. "In the prosecution of a criminal case, it is not essential that the venue of the crime be proved in express terms, provided that it can be established by all the facts and circumstances, beyond a reasonable doubt, that the crime was committed in the county and state as alleged in the affidavit." State v. Gribble (1970),24 Ohio St.2d 85, 263 N.E.2d 904, paragraph two of the syllabus.
{¶ 28} The assistant director of real estate for the Hamilton County Auditor testified that 11787 Hamilton-Cleves Highway was located in Hamilton County. (T.p. 61.) A police officer testified that he was familiar with the 11787 Hamilton-Cleves Highway address and that it was located in Hamilton County. (T.p. 71-73.) The prosecution presented sufficient evidence in "express terms" that 11787 Hamilton-Cleves Highway was in Hamilton County.
{¶ 29} In regard to the 7699 Harrison Pike address, the same police officer testified that he was familiar with the property, and that it was located at the intersection of Harrison Avenue and East Miami River Road in Colerain Township, approximately eight or nine miles south of the Butler County line, and approximately five or six miles east of the Indiana state line. (T.p. 76.) These "facts and circumstances" were sufficient to demonstrate that Hamilton County was the proper venue. SeeState v. Gribble, supra; State v. Neeley (2001), 143 Ohio App.3d 606,758 N.E.2d 745. The third assignment of error is overruled.
{¶ 30} The fourth assignment of error alleges that the trial court erred in instructing the jury.
{¶ 31} A defendant is entitled to have the trial court completely and accurately instruct the jury on all issues that are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder. See State v. Comen (1990), 50 Ohio St.3d 206,553 N.E.2d 640; State v. Williford (1990), 49 Ohio St.3d 247,551 N.E.2d 1279. The trial court need not give a proposed instruction in the precise language requested by the defendant; however, if the requested instruction correctly states the law and is appropriate to the proceedings, it must be included, in substance, in the court's jury charge. See State v. Lessin, 67 Ohio St.3d 487, 1993-Ohio-52,620 N.E.2d 72; State v. Kennedy (Mar. 16, 2001), 1st Dist. No. C-000255. When a defendant claims that a jury instruction was erroneous, it must be viewed in its entirety in the context of the overall charge. See Statev. Frazier, 73 Ohio St.3d 323, 1995-Ohio-235, 652 N.E.2d 1000.
{¶ 32} We hold that the trial court did not err in refusing to give Dute's requested jury instructions. To the extent that the requested instructions correctly stated the law and were appropriate to the facts of the case, they were included in the court's general charge to the jury. The fourth assignment of error is overruled.
{¶ 33} Dute's fifth assignment of error alleges that her convictions were based upon insufficient evidence. Specifically, Dute argues that the prosecution failed to prove beyond a reasonable doubt that she "sold or delivered" the videotapes, as required by R.C.2907.32(A)(2).
{¶ 34} For the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of act could have found the essential elements of the crime beyond a reasonable doubt. See State v. Fears,86 Ohio St.3d 329, 1999-Ohio-111, 715 N.E.2d 136, citing Jackson v.Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781.
{¶ 35} The police officers testified that they had sent the order forms and money orders to "Jennifer" at a post-office box. The money orders were endorsed "Jennifer Dute." A search of the Dute home revealed numerous copies of the various "Jennifer" videotapes, as well as the order forms sent by the police. One of the police officers testified that it appeared that Dute was "operating a business" from her home. During the search, Dute's husband stated to police that Jennifer Dute was in charge of processing the order forms for the "Jennifer" videotapes. We hold that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that all the elements of pandering obscenity were proved beyond a reasonable doubt. The fifth assignment of error is overruled.
{¶ 36} Dute's sixth assignment of error, which alleges that the trial court erred in sentencing her to one year's incarceration on each count, is made moot by our disposition of the first and second assignments of error. We point out, however, that we do not believe that the record supports a finding that Dute was engaged in organized criminal activity.
{¶ 37} The determination of whether conduct constitutes "organized criminal activity" must be made on a case-by-case basis. See State v.Shryock (Aug. 1, 1997), 1st Dist. No. C-961111. Griffin and Katz, Ohio Felony Sentencing Law (1999), 368-369, Section T 4.14.3, defines "organized criminal activity" as "criminal activity which because of the number of participants and planned utilization of those participants poses more of a risk to the public order than an activity carried out by a single individual acting in isolation from other offenders or than multiple individuals acting spontaneously or impulsively." See State v.Shryock, supra; State v. Martinez, 6th Dist. No. WD-01-027, 2002-Ohio-735.
{¶ 38} The record does not support a finding that Dute's conduct was part of an organized criminal activity posing a greater risk to the public because of its organized nature. See State v. Shryock, supra.
{¶ 39} The first assignment of error is sustained to the extent that it alleges that the trial court erred in failing to allow Dute to introduce the "Gangland 17" videotape into evidence as a comparable material, and it is overruled in all other respects. The second assignment of error is sustained. The third, fourth and fifth assignments of error are overruled. The sixth assignment of error is moot.
{¶ 40} The judgment of the trial court is reversed, and the cause is remanded for a new trial and for further proceedings consistent with law and this Opinion.
Judgment reversed and cause remanded.
Painter, J., concurs.
Winkler, J., dissents.