The STATE of Ohio, Appellee,

v.

MYERS et al., Appellants.

[Cite as *State v. Myers* (1990), 63 Ohio App.3d 765.]

Court of Appeals of Ohio,
Clark County.

Nos. 2556, 2557, 2558, 2559, 2560, 2561, 2562, 2563.

Decided Feb. 26, 1990.

*Albert Stewart, Jr.* and *Richard J. O'Neill,* for appellee.

*Hugh R. Tankersley,* for appellants.

Fain, Judge.

This matter involves eight consolidated appeals. Defendants-appellants are dump truck drivers who were stopped in Clark County, Ohio, by State Highway Trooper R.L. Alexander. The stops resulted in nine "overweight" citations being issued to defendants-appellants. After charges were brought in the Springfield Municipal Court, appellants entered their pleas and were subsequently found guilty of operating overloaded vehicles on improved public highways in violation of R.C. 5577.04.[1] Appellants appeal from their convictions and sentences, arguing that the trial court erred: (1) "in overruling their motions to suppress evidence"; (2) in failing to direct verdicts in favor of [appellants]"; and (3) "in imposing a driver's license suspension of one year as a portion of the sentence[s]." We agree with appellants in part, and disagree with them in part. Accordingly, for the reasons set forth below: (i) the judgments in the cases of appellants Roger R. Breeding, Ronald E. Lansing, Jack W. Myers and Richard L. Myers will be affirmed; (ii) that part of the judgment in the case of appellant Gregory A. Salmons in which his driver's license was suspended for one year will be reversed, but in all other respects the judgment in that case will be affirmed; and (iii) the judgments in the cases of appellants Ural Scandrick, Albert J. Suerdick and Steven L. Suerdick will be reversed, and they will be ordered discharged.

I

Between the months of January 1988 and July 1988, Trooper R.L. Alexander of the Ohio State Highway Patrol stopped each of the appellants while he was operating a dump truck on the public highways of Clark County, Ohio. Alexander stopped the vehicles for a variety of articulated reasons, including "safety inspections," "tire pressure," and "observed load." During each stop, Alexander called in portable scales so that the dump trucks could be weighed

---

1. Defendants-appellants Roger R. Breeding and Ronald E. Lansing pleaded not guilty to the charges brought against them. The disposition of the charges against Breeding and Lansing is unclear. All we can ascertain from the record is that the bond payments made by Breeding and Lansing were forfeited. There is nothing in the record to indicate that Breeding and Lansing were ever found guilty of violating R.C. 5577.04.

and checked for "overweight" violations. The stops resulted in nine citations being issued to appellants. (Albert J. Suerdick was cited on two separate occasions.)

Appellants were charged in Springfield Municipal Court with violating the provisions of R.C. 5577.04.

Breeding and Lansing pled not guilty to the charges; their bond payments were subsequently forfeited.

Jack and Richard Myers pled no contest to the charges. They also filed motions to suppress evidence. After a hearing, the trial court overruled their motions and found them guilty. Jack Myers was fined $200.20 and was required to pay court costs. Richard Myers was fined $221 and was also required to pay court costs.

The remaining appellants, Salmons, Scandrick, Albert Suerdick, and Steven Suerdick, pleaded not guilty to the charges brought against them. They also filed motions to suppress evidence, which were overruled. After a trial to the court, all four appellants were found guilty. Each received a fine (which included court costs), a five-day jail sentence, and a one-year license suspension. (Albert Suerdick was sentenced on both charges against him.) The trial court stayed the execution of appellants' jail sentences and license suspensions pending appeal.

All eight appellants have appealed from the separate judgments of the trial court. Their appeals have been consolidated.

## II

Appellants' First Assignment of Error is as follows:

"The trial court erred in overruling appellants' motions to suppress evidence because the stopping of the Appellants violated their rights under the Fourth and Fourteenth Amendments to the U.S. Constitution."

Because appellants' cases are fact-sensitive, we will first outline the statutes and case law applicable to this assignment of error, and then analyze each case, individually, on its facts.

As noted above, Trooper Alexander stopped appellants' dump trucks for various reasons. However, each of the reasons he articulated falls within two separate categories: (1) to check the vehicles for weight violations; or (2) to administer safety inspections. Two statutes are relevant.

The first statute, R.C. 4513.33, provides in pertinent part that:

"Any police officer having reason to believe that the weight of a vehicle and its load is unlawful may require the driver of said vehicle to stop and submit

to a weighing of it by means of a compact, self-contained, portable, sealed scale specially adapted to determine the wheel loads of vehicles on highways * * *. Any vehicle stopped in accordance with this section may be held by the police officer for a reasonable time only to accomplish the weighing as prescribed by this section."

The "reason to believe" standard of R.C. 4513.33 has been held to be the same as the "reasonable suspicion" standard as set forth in *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. *State v. Wells* (1983), 11 Ohio App.3d 217, 11 OBR 340, 464 N.E.2d 596. As explained in *Terry, supra,* 392 U.S. at 21, 88 S.Ct. at 1879–1880, 20 L.Ed.2d at 905–906:

" * * * there is 'no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.' * * * And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."

█ Therefore, in order for a police officer to stop a vehicle and check its weight, the officer must have some reasonable and articulable suspicion that "the weight of [the] vehicle and its load is unlawful."

The second statute, R.C. 4513.02(B), provides in pertinent part that:

"When directed by any state highway patrolman, the operator of any motor vehicle shall stop and submit such motor vehicle to an inspection and such tests as are necessary to determine whether it is unsafe or not equipped as required by law, or that its equipment is not in proper adjustment or repair, or in violation of the equipment provisions of Chapter 4513. of the Revised Code."

Courts have limited the power of police officers to stop vehicles and inspect such vehicles under the authority of R.C. 4513.02(B). In *Delaware v. Prouse* (1979), 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660, 673, the United States Supreme Court held that persons in automobiles on public roadways could not, for that reason alone, have their travel and privacy interfered with at the unbridled discretion of police officers.[2] The court further held that except in those situations in which there is at least articulable and reasonable suspicion that, among other things, a vehicle is subject to seizure for a

---

2. The court noted that states were not precluded from developing methods for spot checks and stops of vehicles that involve less intrusion or that do not involve the unconstrained exercise of discretion by police officers.

violation of the law, the stopping of an automobile and detaining its occupants is unreasonable under the Fourth Amendment. *Id.*[3]

▮ Therefore, in order for a police officer to stop a vehicle at random to conduct a safety inspection, the police officer must have some articulable and reasonable suspicion that the vehicle or its equipment is either unsafe, not in proper adjustment, or is in violation of law.

In either situation, where a vehicle is stopped and detained, whether it be for a weight check or for a safety inspection, there must be some evidence in the record that the police officer had an articulable and reasonable suspicion that the vehicle was in violation of law. The evidence must be more than a conclusory statement on the part of the officer that he or she suspected the vehicle to be "overweight" or "unsafe." The officer must articulate *why* he or she suspected that the vehicle was overweight or unsafe.

▮ Once a police officer has made a legitimate and constitutional stop of a vehicle, the driver and the vehicle may be detained only for as long as the officer continues to have a reasonable suspicion that there has been a violation of law. See *State v. Chatton* (1984), 11 Ohio St.3d 59, 11 OBR 250, 463 N.E.2d 1237. If, after inspecting the vehicle or talking to the driver, the police officer is satisfied that there has been no unlawful activity, the driver must be permitted to continue on his or her way.

▮ However, if circumstances attending an otherwise proper stop should give rise to a reasonable suspicion of some other illegal activity, different from the suspected illegal activity that triggered the stop, then the vehicle and the driver may be detained for as long as that new articulable and reasonable suspicion continues, even if the officer is satisfied that the suspicion that justified the stop initially has dissipated.

We will now consider each case, individually, on its facts.

## A

In the cases of Breeding and Lansing, there was no showing that either defendant filed a motion to suppress evidence or that the trial court entertained a motion to suppress evidence. Therefore, neither Breeding nor Lansing can prevail in this First Assignment of Error.

---

**3.** This is not to imply that a police officer must have a "reasonable and articulable suspicion" in order to stop a vehicle for purely benign purposes, *e.g.*, to ask the driver of the vehicle for directions, or to warn the driver of the vehicle of hazardous road conditions.

## B

■ On June 7, 1988, Trooper Alexander stopped Jack Myers' vehicle on U.S. Route 68. Alexander testified that he stopped Myers' truck because he "could see the load on [Myers'] dump truck and when [he] came in behind [Myers] [he] could see the tires bulging." Alexander further testified that Myers was hauling a load of stone, and "through [his] experience the number of trucks that [he] [has] weighed and issued citations, this indicated to [him] that the truck was overweight." After the stop, Alexander called in the portable scales. Myers' truck was found to be overweight, and Myers was cited under the provisions of R.C. 5577.04(A)(2).

We conclude that Alexander's stop of Jack Myers' vehicle met the requirements of the Fourth Amendment and R.C. 4513.33. Alexander testified, in more than a conclusory manner, that he had an articulable and reasonable suspicion that Myers' truck was overweight, based, at least in part, on his observation of Myers' load. Moreover, there is no evidence in the record that Alexander detained Myers for an unreasonable length of time.

## C

■ Alexander stopped Richard Myers on February 17, 1988. Myers was traveling northbound on Upper Valley Pike near State Route 41. Alexander testified that he stopped Myers' vehicle because he "could see [Myers'] load and [he] gave [Myers' vehicle] a safety inspection * * *." Alexander explained that when he first saw Myers' vehicle, he noticed "[t]he load, the size of the load that was on [Myers'] truck and the way it was loaded." Alexander further testified that [he] could see [Myers'] load and that [was] why [he] came in behind [Myers] in the first place and then after [he] made contact with [Myers] [he] inspected [Myers'] truck." Myers was cited for weight and safety violations.

We conclude that Alexander's stop of Richard Myers was constitutional. Alexander articulated his reasonable suspicion (for stopping Myers) at the hearing on Myers' motion to suppress. Alexander testified that he initially stopped Myers to check the vehicle's weight, and once he had stopped Myers, he noticed that there were some safety defects as well. Myers was stopped for legitimate purposes and was cited accordingly. Again, there was nothing in the record to indicate that Myers was detained for an inordinate length of time.

## D

■ On April 15, 1988, Alexander stopped Salmons' vehicle in Clark County, Ohio. Alexander testified that the reason he stopped Salmons was because of

"his tire pressure." When asked what he was referring to when he said "tire pressure," Alexander explained that he observed "the way Salmons' tires were bulging." After making the stop, Alexander also observed the load on Salmons' vehicle. Alexander called in the scales and cited Salmons for an overweight violation.

In this particular case, Alexander articulated a reasonable suspicion for making the stop of Salmons' truck: "bulging tires." We conclude that because "bulging tires" would at least trigger a reasonable suspicion that the tires were dangerously underinflated, Alexander had a reasonable basis to stop Salmons' vehicle for a safety inspection.[4] Moreover, because Alexander observed the load on Salmons' vehicle after having made a legitimate stop, it was also not inappropriate to have called in the scales to check the vehicle's weight. Alexander's stop of Salmons, as well as his subsequent detention of Salmons, was not unconstitutional.

## E

On February 10, 1988, Scandrick was stopped by Alexander on U.S. Route 68 near State Route 334. Alexander testified that the only reason for stopping Scandrick was to administer a "safety inspection." Alexander offered no other basis for the stop. Upon these facts, we conclude that Alexander's stop of Scandrick's vehicle was unconstitutional. There is no evidence in the record, other than Alexander's conclusory statement, to indicate that Alexander had an articulable and reasonable suspicion that Scandrick's vehicle was unsafe or was in violation of safety laws.

## F

Alexander stopped Albert Suerdick on two separate occasions. The first stop was on January 7, 1988, near State Route 444 and Interstate 675. Alexander testified that he stopped Suerdick for a "safety inspection and his tires were balding." Alexander then called in portable scales because he believed Suerdick's vehicle was overweight. The only reason articulated for giving rise to this belief was "tire pressure."

We conclude that while Alexander's initial reason for stopping Suerdick on January 7, 1988, was legitimate, *i.e.*, to make a safety inspection because of balding tires, there is insufficient evidence in the record to justify

---

**4.** Although the state argued that Alexander's observation of bulging tires would also give rise to a reasonable suspicion of an overweight violation, the defense, in at least one of these cases, offered impressive expert testimony that an overweight load would not cause a bulge in the tires that could possibly be noticed by someone travelling in another vehicle.

the weighing of Suerdick's vehicle. Even though Alexander testified that he observed the "tire pressure" on the vehicle and believed the vehicle to be overweight, he did not articulate a reasonable basis for his conclusions. There is no evidence that Alexander observed an overload in the bed of the truck or that he saw bulging tires. Consequently, Alexander showed no basis for determining "tire pressure," nor did he show any basis for concluding that Suerdick's truck was overweight. Accordingly, Suerdick's continued detention while the portable scales were brought in and his truck was weighed was unconstitutional.

Suerdick was stopped a second time by Alexander on March 3, 1988, at Interstate 675 and Interstate 70. Alexander testified that the reason for this stop was "tire pressure and safety inspection." After the stop, Alexander observed Suerdick's load and then concluded that the vehicle was overweight. The scales were called in and Suerdick's vehicle was weighed. The truck was found to be overweight and Suerdick was cited.

We conclude that the initial reason for stopping Suerdick was insufficient. Alexander testified in a conclusory manner that the reason Suerdick was stopped was because of "tire pressure and safety inspection." Alexander gave no real basis for his conclusion that Suerdick's vehicle required a safety inspection. As with the other stop, Alexander provided no basis for any conclusion he might have drawn concerning tire pressure. Accordingly, without Alexander having had a reasonable and articulable suspicion that Suerdick's truck was unsafe, there was no legitimate basis for having stopped Suerdick to conduct a safety inspection.

## G

Alexander stopped Steve Suerdick on January 8, 1988, on the southbound lanes of Interstate 675. Just as in the second stop of Albert Suerdick, Alexander stopped Steve Suerdick because of the "tire pressure" and for a "safety inspection." After the stop was made, Alexander observed Suerdick's load and concluded that the vehicle was overweight. Suerdick was subsequently cited for violating the provisions of R.C. 5577.04.

As noted above, where a police officer testifies that the sole reasons for making a stop are "tire pressure" and "safety inspection," without any further explanation of the basis for the stop, the stop is unconstitutional.

## H

For the foregoing reasons, the First Assignment of Error as it relates to Breeding, Lansing, Jack Myers, Richard Myers, and Salmons is overruled.

The same assignment of error as it relates to Scandrick, both of Albert Suerdick's cases, and Steve Suerdick is sustained.

### III

Appellants' Second Assignment of Error is as follows:

"In Springfield Municipal Court case Nos. 88–TR 559, 513, 1911, 4572 and 2950, the trial court erred in failing to direct a verdict in favor of appellants."

Essentially, appellants argue that because the state failed to establish a prima facie case on the charges of violating R.C. 5577.04, the trial court should have granted directed verdicts in their favor. As to appellants Scandrick, Albert Suerdick, and Steve Suerdick, we agree.

### A

In the cases of Breeding and Lansing, there is nothing in the record from which we can find that either appellant went to trial on the charge of violating R.C. 5577.04, or that the court erred in failing to grant them a directed verdict.

In the cases of Jack and Richard Myers, the records indicate that both appellants pleaded no contest and were subsequently found guilty and sentenced. There is no showing that the trial court erred in failing to grant them directed verdicts.

The Second Assignment of Error is overruled as it applies to appellants Breeding, Lansing, Jack Myers, and Richard Myers.

### B

In order to establish a prima facie case on a charge of violating the provisions of R.C. 5577.04, pertaining to the operation of an overloaded vehicle on the public highways, the prosecution must offer proof of the axle spacing on the alleged offending vehicle, and offer proof that the scale used in weighing the vehicle was properly sealed by state authorities. *State v. Gribble* (1970), 24 Ohio St.2d 85, 53 O.O.2d 222, 263 N.E.2d 904, paragraph one of the syllabus.

In four of the cases before us, to which this assignment of error is applicable, the prosecution failed to introduce any evidence as to spacing between the axles on the offending dump trucks. In Scandrick's case, Steve Suerdick's case, and both of Albert Suerdick's cases, the record is devoid of any evidence relating to axle spacing. Accordingly, in those cases, the state failed to prove an essential element of the crime charged, and the appellants' Second Assignment of Error is sustained.

## C

In Salmons' case, Alexander testified that the vehicle was "20 feet, 9 inches from the center of the front steering axle to the rearmost axle, which would allow the gross weight to be 56,900 pounds. I grossed him at 61,600 pounds. Which put him 4,700 pounds over gross weight." The testimony elicited from Alexander was sufficient to satisfy the state's burden on the elements of proving axle spacing.

However, pursuant to *State v. Gribble, supra,* the prosecution was still required to prove that the scale used to weigh Salmons' vehicle was sealed by appropriate state officials. At trial, the prosecution offered as evidence certified copies of affidavits from the Ohio Department of Agriculture indicating that the scales used by the State Highway Patrol had been accurately calibrated within the limits set forth by the National Bureau of Standards and the Ohio Revised Code. All the scales had been tested and sealed within one year of Salmons' citation. Trooper Alexander testified that the scales referred to in the affidavits offered as evidence included the scale used to weigh Salmons' vehicle, as well as the scales used to weigh the other appellants' vehicles. The trial court admitted the affidavits into evidence.

Upon this record, we conclude that the prosecution met its burden with regard to the element proving that the scales were properly sealed by state officials.[5]

The Second Assignment of Error is overruled as it applies to Salmons.

## D

The Second Assignment of Error is overruled in the cases of Breeding, Lansing, Jack Myers, Richard Myers, and Salmons.

The Second Assignment of Error is sustained in the cases of Scandrick, Steve Suerdick, and Albert Suerdick (both cases).

## IV

Appellants' Third Assignment of Error is as follows:

---

**5.** We note that in *State v. Gribble, supra,* the court held that the prosecution may satisfy its burden of proof with regard to the accuracy of the scales by proving that the scale used in weighing the vehicle bore the type of official seal customarily employed by municipal, county, or state sealers in the performance of their duties under the Revised Code. We conclude that affidavits certifying that the scales used had been properly sealed in conformance with legal requirements, such as the affidavits submitted in the cases before us, are sufficient to meet the requirement that the prosecution prove that the scales were properly sealed.

"The trial court (Judge Nevius) erred in imposing a driver's license suspension of one year as a portion of the sentence."

■■■ Appellants contend that because the penalty provisions of the Revised Code relating to R.C. 5577.04 do not provide for driver's license suspension, the trial court erred in imposing one-year driver's license suspensions as part of their sentences. We agree.

## A

Because the sentences of Breeding, Lansing, Jack Myers, and Richard Myers did not include a driver's license suspension, the Third Assignment of Error will be overruled as to those defendants-appellants.

## B

R.C. 5577.99 provides, in pertinent part, that "[w]hoever violates the weight provisions of sections 5577.01 to 5577.09, inclusive, of the Revised Code shall be fined * * * or imprisoned * * *." Nowhere in this penalty statute, or anywhere else that we know of, is there any provision granting a trial court the power to suspend a driver's license as part of its sentence for an "overweight" vehicle conviction. Accordingly, since the General Assembly has not provided for license suspension in this situation, it was error for the trial court to have imposed such penalty.

The Third Assignment of Error is sustained as to Salmons, Scandrick, Albert Suerdick, and Steve Suerdick.

## V

All of Breeding's, Lansing's, Jack Myers's and Richard Myers' assignments of error having been overruled, the judgments of the trial court in their cases will be affirmed.

Salmons' Third Assignment of Error having been sustained, that part of the judgment in his case providing for a one-year driver's license suspension will be reversed; the judgment in Salmons' case will be affirmed in all other respects.

All of Scandrick's, Albert Suerdick's, and Steve Suerdick's assignments of error having been sustained, the judgments of the trial court in their cases will be reversed, and they will be ordered discharged.

*Judgment accordingly.*

WILSON and BROGAN, JJ., concur.