OPINION
{¶ 1} Defendant-appellant William David Robinson appeals from the February 1, 2002, Judgment Entry of the Licking County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On August 31, 2001, the Licking County Grand Jury indicted appellant on one count each of aggravated possession of drugs (Crystal Methamphetamine) in violation of R.C. 2925.11(A)(C)(1)(a), a felony of the fifth degree, possession of marijuana in violation of R.C.2925.11(A)(C)(3)(a), a minor misdemeanor, possession of drug paraphernalia in violation of R.C. 2925.14(C)(1), a misdemeanor of the fourth degree, and obstructing official business in violation of R.C.2921.31(A), a misdemeanor of the second degree. At his arraignment on September 17, 2001, appellant entered a plea of not guilty to the charges contained in the indictment.
 {¶ 3} Thereafter, on October 23, 2001, appellant filed a Motion to Suppress. Appellant, in his motion, alleged the officer who stopped him for speeding did not have sufficient justification to detain appellant past the scope of the initial traffic stop and, therefore, the officer's subsequent discovery of contraband was improper. The following evidence was adduced at the suppression hearing held on November 9, 2001.
 {¶ 4} On August 21, 2001, Trooper Nicky Oskins of the Ohio State Highway Patrol was on duty when she observed a commercial motor vehicle eastbound on Interstate 70 which appeared to be traveling in excess of the posted speed limit. At the hearing, Trooper Oskins testified that she activated her K-55 radar and "observed an audio Doppler turn which corresponded with my estimated speed." Transcript at 6. According to the Trooper, "[t]he speed, the visual speed readout showed 70 miles per hour, and that vehicle is required to be no more than 55 miles per hour." (Tr. at 6-7.)
 {¶ 5} Trooper Oskins then initiated a traffic stop of the vehicle. After the Trooper got out of her cruiser, appellant met her at the rear of his vehicle where she informed him he had been pulled over for speeding. During their conservation, Trooper Oskins noticed appellant "seemed nervous" and he "seemed to be agitated, very excited speech, eyes were bloodshot, glassy." Tr. at 8. Appellant did not follow her instructions very well. Trooper Oskins informed appellant she was going to conduct a DOT inspection of appellant's truck. After the Trooper asked appellant to get into the vehicle cab, appellant walked around the front of the vehicle and entered the cab from the driver's compartment. The Trooper stepped up on the running board.
 {¶ 6} While she was on the running board, Trooper Oskins noticed there was a pack of Bugler rolling papers under a clip board on the passenger side seat and grabbed them after appellant reached for them. According to the Trooper, the rolling papers are used for rolling either marijuana cigarettes or regular tobacco. When the Trooper asked appellant "where's your smoke" in order to get appellant to tell her what he used the rolling papers for, appellant "said that he smoked it all earlier, he just got done smoking the last one, and he picked a marijuana roach up out of the ashtray and put it in my open palm." Tr. at 15. Trooper Oskins testified she smelled burnt marijuana in the vehicle, which had dark tinted windows. After placing the roach in the Trooper's hand, appellant grabbed it out of her hand and swallowed it.
 {¶ 7} According to Trooper Oskins, shortly thereafter, appellant grabbed something off the dashboard and exited his vehicle. The Trooper, who could see appellant's feet underneath the truck, testified as follows when asked if she could see appellant:
 {¶ 8} "A. I saw his feet pacing back and forth. I heard him, he was taunting me. He said, "I'm over here, girlie. Come on over here. Come and get me. Where are you at." He said that twice. I — at that point, I saw him for the last time walk from the driver's side of the vehicle back, his feet went back between the driver's — the cab and the trailer. So I tried to position myself to where I could see back there, and at that point, I saw him turn and walk back towards the front of the vehicle, and I thought he was walking — he was going to walk around the vehicle, so I went and I tried to assume some cover from the flare of the tractor." Tr. at 20. Trooper Oskins further testified that she saw several items fall to the ground while appellant was pacing. Tr. at 22.
 {¶ 9} When appellant walked around the front of the vehicle, he complied with Trooper Oskins' orders to get down on the ground and put his hands on his head. Once backup assistance arrived on the scene, appellant was handcuffed and arrested. Trooper Oskins then returned to the area where she had seen several items fall to the ground and retrieved a plastic baggie, a lighter and an ashtray that appellant had placed on the ground. The baggie "had a yellowish tintish rock in it with something, it appeared that it was several rocks in the small baggie, and one had been crushed up . . ." Tr. at 25.
 {¶ 10} The substance later proved to be amphetamines.
 {¶ 11} Thereafter, on October 23, 2001, appellant filed a Motion to Suppress. Appellant, in his motion, alleged that the officer who stopped him for speeding did not have sufficient justification to detain appellant past the scope of the initial traffic stop and that, therefore, the officer's subsequent discovery of contraband was improper.
 {¶ 12} At the conclusion of the suppression hearing, the trial court denied appellant's Motion to Suppress, stating on the record as follows:
 {¶ 13} "With respect to the motion, the Court notes that the trooper properly stopped the defendant in this case. The testimony was that he got out, seemed nervous, agitated, very animated, having reviewed the videoptape. Defendant's own testimony would be — or was that he was aware of the inspection. This was a Level 2 inspection, and the Court believes the trooper with respect to her testimony. The Court further finds that the scope of an inspection of this type would obviously include checking out the cab of a truck. The Court finds that there was no improper detention; that there was no violation of the defendant's constitutional rights, either under Ohio or federal constitution. Therefore, the motion for suppression will be denied." Transcript at 60. An Entry denying appellant's motion, which contained findings of fact and conclusions of law, was filed on November 26, 2001.
 {¶ 14} The trial court, in the case sub judice, cited to R.C.4513.02 in support of its decision denying appellant's Motion to Suppress. The trial court, in its November 26, 2001 Entry, specifically stated, in relevant part, as follows:
 {¶ 15} "The Ohio State Trooper is allowed to conduct safety inspections under Section 4513.02 of the Ohio Revised Code and under the rules, regulations and policies of the Department of Transportation Inspections on Commercial Vehicles. Under State v. Myers (1990), 63 O App.3d 765, a police officer can conduct a safety inspection once there is reasonable and articulable suspicion that the commercial vehicle or its equipment is either unsafe, not in proper adjustment or is in violation of law. Here, the Trooper pulled the defendant's vehicle over for speeding and thus was allowed to conduct the safety inspection. The illegal drugs were found outside of the defendant's vehicle where the Trooper observed the defendant drop them. Any statements the defendant made to the Trooper were voluntary and the handing of the marijuana roach to the Trooper was voluntary. Anything the Trooper found that was illegal was found in plain view where the Trooper was legally allowed to be at that time. Therefore, this Court finds as a Conclusion of Law that the defendant's U.S. and Constitutional Rights were not violated."
 {¶ 16} Subsequently, on February 1, 2002, appellant withdrew his former not guilty plea and entered a plea of no contest to the charges contained in the indictment. The court sentenced appellant to six months in prison and suspended his driver's license for six months on the charge of aggravated possession of drugs. With respect to the charge of possession of marijuana, appellant was fined $100.00. Finally, appellant was sentenced to 30 days in jail on the charges of possession of drug paraphernalia and obstructing official business. The trial court, ordered appellant's sentences be served concurrently.
 {¶ 17} Appellant assigns the following assignment of error:
 {¶ 18} "THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE THE OFFICER HAD NOT FORMED THE REQUISITE REASONABLE AND ARTICULABLE SUSPICION OF CRIMINAL ACTIVITY TO DETAIN HIM FOR ANY PURPOSE BEYOND THE SCOPE OF THE INITIAL TRAFFIC STOP."
 I {¶ 19} Appellant argues that the trial court erred in denying his Motion to Suppress, because Trooper Oskins did not have a reasonable and articulable suspicion of criminal activity and, therefore, was not justified in detaining appellant for any purpose beyond the scope of the initial traffic stop for speeding.
 {¶ 20} Appellant does not dispute that the initial traffic stop was valid. Rather, appellant argues that being stopped for speeding, does not give a police officer sufficient justification for further detaining him absent specific and articulable facts which support reasonable suspicion of criminal activity.
 {¶ 21} The detention of an individual by a law enforcement officer does not violate the Fourth Amendment to the United States Constitution or Section 14, Article I of the Ohio Constitution if there are, at the very least, "specific and articulable" facts indicating the detention was reasonable. See, State v. Chatton (1984), 11 Ohio St.3d 59, 61,463 N.E.2d 1237 and Terry v. Ohio (1968), 392 U.S. 1, 21-22,88 S.Ct. 1868, 20 L.Ed.2d 889. To justify an investigatory detention, a law enforcement officer must "demonstrate specific and articulable facts which, when considered with the rational inferences therefrom, would, in light of the totality of the circumstances, justify a reasonable suspicion that the individual who is stopped is involved in illegal activity." State v. Correa (1995), 108 Ohio App.3d 362, 366,670 N.E.2d 1035. See, Terry, supra. "The scope and duration of the investigative stop must last no longer than is necessary to effectuate the purpose for which the initial stop was made." State v. Bevan (1992),80 Ohio App.3d 126, 129, 608 N.E. 1099, citing Chatton, supra.
 {¶ 22} At the hearing on the motion to suppress, Trooper Oskins testified she had a conversation with appellant about his seat belt and the dark tinted windows on the cab of the truck (Tr. at 8). On the videotape of the stop, Oskins states she could not see whether appellant was wearing his seat belt, because of the dark tint on the windows of the cab.
 {¶ 23} After Trooper Oskins gave appellant his speeding ticket, she told him she would do a safety inspection and it "didn't appear he had a problem with it at all." (Tr. at 12). The videotape of the stop corroborates this, showing appellant nodding his head.
 {¶ 24} The trooper testified she was certified to perform DOT safety inspections. (Tr. at 10). The court held because the Trooper pulled the defendant's vehicle over for speeding, she was allowed to conduct the safety inspection. The illegal drugs were found outside of the defendant's vehicle where the Trooper observed the defendant drop them. Any statements the defendant made to the Trooper were voluntary and the handing of the marijuana roach to the Trooper was voluntary. Anything the Trooper found that was illegal was found in plain view where the Trooper was legally allowed to be at that time.
 {¶ 25} Appellant cites us to State v. Landrum (2002)137 Ohio App.3d 718, wherein the Court of Appeals for Vinton County held where the state trooper had not observed any violation, and the trooper did not use a uniform selection procedure, a stop violates theFourth Amendment.
 {¶ 26} R.C. 4513.02 allows the State Highway Patrol to inspect a vehicle to determine if it is unsafe or not equipped as required by law.State v. Shiley, (1991), 74 Ohio App.3d 230, 232, 598 N.E.2d 775. The authority to stop and inspect vehicles pursuant to R.C. 4513.02 is, however, not absolute. In State v. Myers, (1990) 63 Ohio App.3d 765;580 N.E.2d 61, the court cited R.C. 4513.02[1] in holding that "[o]nce a police officer has made a legitimate and constitutional stop of a vehicle, the driver and vehicle may be detained only for so long as the officer continues to have a reasonable suspicion that there has been a violation of law." However, if circumstances attending an otherwise proper stop should give rise to a reasonable suspicion of some other illegal activity, different from the suspected illegal activity that triggered the stop, then the vehicle and the driver may be detained for as long as that new articulable and reasonable suspicion continues, even if the officer is satisfied that the suspicion that justified the stop initially has dissipated." Id. at 771.
 {¶ 27} We have viewed the videotape of the officers' dashboard camera, which filmed the stop. As the officer testified, appellant appeared nervous and behaved rather unusually.
 {¶ 28} After the officer directed appellant to return to his cab on the passenger's side, to avoid passing traffic, appellant failed to comply and walked on the left side, nearly in the lane of travel. Thereafter, his conduct became more and more bizarre, culminating with his voluntary surrender of the marijuana roach.
 {¶ 29} We also find the officer did not perform a safety check. There is no "bright line" test for when a traffic stop concludes, but rather, we must view each under its particular facts and circumstances. In the case at bar, the stop did not end when the officer handed appellant the speeding ticket. The officer properly continued to observe appellant and evaluate his behavior while re-entering his truck. Furthermore, an officer may always look in the window of a vehicle, and the appellant has no expectation of privacy in whatever is in plain view within the cab. The transcript and the videotape show the officer barely had time to begin to look at the tires when appellant's conduct gave the trooper cause to investigate appellant's condition further.
 {¶ 30} The assignment of error is overruled.
 {¶ 31} For the foregoing reasons, the judgment of the Court of Common Pleas, of Licking County, Ohio, is affirmed and the cause is remanded to that court for execution of sentence.
By Gwin, P.J., Farmer, J. and Edwards, J. dissents.
motor vehicle search and seizure
[1] The version of R.C. 4513.02(B) that the court cited in Myers, supra. stated, in pertinent part, as follows: "When directed by any state highway patrolman, the operator of any motor vehicle shall stop and submit such motor vehicle to an inspection and such tests as are necessary to determine whether it is unsafe or not equipped as required by law, or that its equipment is not in proper adjustment or repair, or in violation of the equipment provisions of Chapter 4513. of the Revised Code."