{¶ 32} I respectfully dissent from the majority's analysis and disposition of appellant's sole assignment of error.
 {¶ 33} In the case sub judice, as is stated above, Trooper Oskins' stop of appellant for speeding was proper. However, I would find that the circumstances surrounding that stop did not "give rise to a reasonable suspicion of some other illegal activity, different from the suspected illegal activity that triggered the stop . . ." State v. Myers (1990),63 Ohio App.3d 765, 771, 580 N.E.2d 61. I concur with appellant that Trooper Oskins did not have a reasonable suspicion, after initially stopping appellant for speeding, that appellant was involved in other illegal activity. At the suppression hearing in this matter, Trooper Oskins testified as follows when asked whether, after her initial contact with appellant and just prior to conducting the DOT inspection, she had reason to believe that appellant had violated any criminal statute other than the speeding violation: "I had no reason to believe that he had violated any criminal statute." Transcript at 39.
 {¶ 34} The trial court, in its opinion, found that a police officer is authorized by R.C. 4513.02 to conduct a safety inspection of a motor vehicle if the officer had a reasonable and articulable suspicion that there was any violation of law. Since speeding is a violation of law, the trial court concluded that the trooper in this case was justified in conducting a safety inspection of appellant's truck under R.C. 4513.02(B). I, however, do not concur.
 {¶ 35} Revised Code 4513.02 is captioned "Prohibition against operating unsafe vehicles; inspection of vehicles; exemption; official inspection stations." Such section states, in part, as follows:
 {¶ 36} "(A) No person shall drive or move, or cause or knowingly permit to be driven or moved, on any highway any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person.
 {¶ 37} "(B) When directed by any state highway patrol trooper, the operator of any motor vehicle shall stop and submit such motor vehicle to an inspection under division (B)(1) or (2) of this section, as appropriate, and such tests as are necessary.
 {¶ 38} "(1) Any motor vehicle not subject to inspection by the public utilities commission shall be inspected and tested to determine whether it is unsafe or not equipped as required by law, or that its equipment is not in proper adjustment or repair, or in violation of the equipment provisions of Chapter 4513. of the Revised Code.
 {¶ 39} "Such inspection shall be made with respect to the brakes, lights, turn signals, steering, horns and warning devices, glass, mirrors, exhaust system, windshield wipers, tires, and such other items of equipment as designated by the superintendent of the state highway patrol by rule or regulation adopted pursuant to sections 119.01 to 119.13
of the Revised Code.
 {¶ 40} "Upon determining that a motor vehicle is in safe operating condition and its equipment in conformity with Chapter 4513. of the Revised Code, the inspecting officer shall issue to the operator an official inspection sticker, which shall be in such form as the superintendent prescribes except that its color shall vary from year to year.
 {¶ 41} "(2) Any motor vehicle subject to inspection by the public utilities commission shall be inspected and tested in accordance with rules adopted by the commission. Upon determining that the vehicle and operator are in compliance with rules adopted by the commission, the inspecting officer shall issue to the operator an appropriate official inspection sticker."
 {¶ 42} R.C. 4513.02(B) speaks of violations of the equipment provisions of R.C. Chapter 4513, not of the law in general. Revised Code4513.02 has generally been cited in cases when vehicles are stopped by a police officer based on concerns over vehicle safety. In Myers, for example, one of the dump truck drivers (Case C) was stopped after a police officer noticed that the truck's load appeared to be overweight. After stopping the truck to check on its weight, the police officer noticed some safety defects. The court, in Myers, held that the initial stop to check on the truck's weight was constitutional and that the detention was legitimate since once the police officer had stopped the truck, "he noticed that there were some safety defects as well." Another driver, in Myers (Case D), was stopped after the police officer noticed that the driver's truck appeared to have bulging tires. After stopping the truck, the police officer observed the load on the truck and, based over concerns that the truck was overweight, detained the driver and had the truck weighed. The court held that both the stop and the subsequent detention were not unconstitutional.
 {¶ 43} In short, since, in the case sub judice, the trooper lacked a reasonable and articulable suspicion that any equipment provisions were violated by appellant, I would find that the trooper was not justified in further detaining appellant to conduct a safety inspection of his truck.
 {¶ 44} I would also find that the inspection of appellant's truck was unconstitutional under Knowles v. Iowa (1998), 525 U.S. 113,119 S.Ct. 484, 142 L.Ed.2d 492, a case decided after Myers, supra. InKnowles, the petitioner was stopped for speeding and was issued a citation but was not arrested. The police officer, pursuant to an Iowa statute that authorized a full search of an automobile and driver in those instances where the police officer elected to issue a citation rather than arrest the driver, conducted a full automobile search of the petitioner's vehicle. The officer, in Knowles, did not have the driver's consent or reasonable or articulable suspicion of criminal activity. During the search, the officer discovered a bag of marijuana and a pot pipe. The United States Supreme Court reversed the petitioner's conviction for possession of a controlled substance and keeping a controlled substance in an automobile, holding that the search, although authorized by Iowa state law, was unconstitutional under the Fourth Amendment. The United States Supreme Court, in Knowles, specifically held that neither of the two historical rationales for the "search incident to arrest" were applicable. With respect to the first rationale, the need to disarm the suspect in order to take him into custody, the court, in Knowles, noted that "[t]he threat to officer safety from issuing a traffic citation, however, is a good deal less than in the case of a custodial arrest." Id. at 117. With respect to the second rationale, the need to preserve evidence for later use at trial, the court further noted that once the petitioner in Knowles was stopped for speeding and issued a citation, "all the evidence necessary to prosecute that offense had been obtained." Id. at 118.
 {¶ 45} Applying Knowles, I believe that the search of appellant's vehicle by Trooper Oskins was unconstitutional. However, appellee argues that there was no search. Appellee sets forth in its brief that "[i]t is well-established that any items that are in plain view of an officer who has a right to be in position to have that view are subject to seizure and may be introduced in evidence." Harris v. United States (1968),390 U.S. 234, 236. I would find that appellant prevails even under a plain view analysis. As is stated above, Trooper Oskins did not have reasonable suspicion of additional criminal activity (beyond speeding) to justify the continued detention of appellant. And, it was the continued detention of appellant that put Trooper Oskins in a position to have plain view of suspicious materials. Thus, I would hold that the contraband obtained as a direct result of the illegal detention should have been suppressed. See State v. Bryson (2001), 142 Ohio App.3d 397,755 N.E.2d 964.
 {¶ 46} Based on the foregoing, I would sustain appellant's assignment of error and reverse.