DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Ottawa County Municipal Court that found appellant guilty, following a plea of no contest, of one count of driving under the influence of alcohol. For the reasons set forth below, the judgment of the trial court is affirmed. *Page 2 
 {¶ 2} Appellant Kimberly Kuhl sets forth the following two assignments of error:
 {¶ 3} "Assignment of Error No. 1:
 {¶ 4} "The court erred by failing to suppress all evidence obtained by the Ohio State Highway Patrol when the state trooper did not have reasonable suspicion that appellant was intoxicated.
 {¶ 5} "Assignment of Error No. 2:
 {¶ 6} "The court erred by failing to suppress all evidence obtained by the Ohio State Highway Patrol when the state trooper did not have reasonable suspicion to initiate a second stop of appellant."
 {¶ 7} On September 10, 2006, at approximately 10:00 p.m., Trooper Brian Mamere of the Ohio State Highway Patrol stopped appellant on State Route 269 in Ottawa County after the trooper observed that the taillights on appellant's van were not working. When Trooper Mamere explained the reason for the stop, appellant asked Mamere if she could borrow his flashlight and replace the fuse for the taillights. Mamere agreed, and stood nearby as appellant replaced the fuse. During those several minutes, Mamere noticed that appellant smelled of alcohol. After the fuse was successfully replaced, Mamere asked appellant how much she had to drink that evening; appellant replied "not too much." Trooper Mamere then asked appellant to take the standard field sobriety tests. Based on appellant's performance on the field sobriety tests and a reading of .127 percent on the portable breathalyzer, Trooper Mamere placed appellant under arrest for driving under the influence of alcohol. Appellant was transported to the state *Page 3 
highway patrol post where a second breathalyzer test showed appellant's blood alcohol level to be . 127 percent.
 {¶ 8} Appellant subsequently filed a motion to suppress all evidence related to and stemming from the traffic stop, asserting that Trooper Mamere lacked reasonable suspicion to extend the duration of the traffic stop after the taillights were fixed.
 {¶ 9} A hearing on the motion was held before a magistrate on April 11, 2007. At the hearing, Trooper Mamere testified that he initiated the traffic stop because he saw that the taillights on appellant's vehicle were not working. Mamere approached appellant and explained why he had stopped her. When appellant stepped out of the car to replace the fuse, Mamere noticed "a strong odor of alcoholic beverages on or about her person." He also noticed that her eyes were bloodshot and glassy. Trooper Mamere denied having told appellant she was free to go after she changed the fuse.
 {¶ 10} The magistrate denied the motion to suppress, finding that Trooper Mamere was justified in extending the duration of the traffic stop after he detected the odor of alcohol. Appellant entered a plea of no contest, was found guilty, and was granted a stay of sentence pending appeal to this court from the denial of her motion to suppress.
 {¶ 11} Appellant's two assignments of error arise from the denial of her motion to suppress and therefore will be addressed together. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of a witness. State v.Smith, 80 Ohio St.3d 89, 105, 1997-Ohio-355; State v. Fanning (1982),1 Ohio St.3d 19, *Page 4 
20. This court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Davis
(1999), 133 Ohio App.3d 114. Applying those facts, we must then independently determine as a matter of law whether the facts meet the appropriate legal standard. State v. Klein (1991), 73 Ohio App.3d 486,488.
 {¶ 12} Appellant argues that two separate stops occurred the night of her arrest-one for the taillight violation and a second for driving under the influence of alcohol. Appellant does not dispute the propriety of the initial stop for the taillight violation. She asserts, however, that the first stop concluded when Trooper Mamere mentioned the possibility of driving with her hazard lights on and that, after that statement was made, there was a second stop for which the trooper did not have probable cause. She argues that, while talking about the taillights, Trooper Mamere told her that she could continue on her way home if she turned on her hazard lights, which he had verified were working. Appellant argues that the justification for the stop ended once the taillight problem was remedied. She states that it was only after she replaced the taillight fuse that Mamere inquired as to whether she had anything to drink that night. Appellant further argues that Trooper Mamere had not observed her driving erratically before he stopped her and did not observe slurred speech or any other signs of intoxication while she fixed the fuse, and therefore was not justified in administering the field sobriety tests or the portable breathalyzer test.
 {¶ 13} We find at the outset that the circumstances leading to appellant's arrest arose from only one traffic stop. While appellant took the time to fix the fuse, Trooper *Page 5 
Mamere stood next to her and was able to notice the odor of alcohol. The video that was recorded from the trooper's cruiser indicates that appellant was outside her van fixing the fuse and talking to Mamere for nearly four minutes. This extended interaction allowed the trooper to notice the odor of alcohol, which he determined was coming from her person and not from the interior of the van. At no point was appellant told she was free to go. The trooper's suggestion early on that the van could be driven a short distance with the hazard lights on was not the equivalent of telling appellant she was free to go. The hazard lights option was mentioned by Mamere before appellant, of her own volition, extended the duration of the stop by insisting on replacing the fuse immediately.
 {¶ 14} Appellant also argues that Trooper Mamere did not have probable cause to initiate what she claims was a second stop. We have determined, however, that there was no second stop and that the circumstances of this case simply indicate that the duration of the stop was extended once Trooper Mamere detected the odor of alcohol. Accordingly, we will consider the basis for administering the field sobriety test.
 {¶ 15} It is well-established that the detention of an individual by a law enforcement officer must, at the very least, be justified by "specific and articulable facts" indicating that the detention was reasonable. Terry v. Ohio (1968), 392 U.S. 1, 21-22. Generally, the scope and duration of an investigative traffic stop must last no longer than is necessary to effectuate the purpose for which the initial stop was made. United States v. Brignoni-Ponce (1975), 422 U.S. 873, 881-882;State v. Chatton (1984), 11 Ohio St. 3d 59, 63. However, if circumstances attending an otherwise proper stop should give *Page 6 
rise to a reasonable suspicion of some other illegal activity, different from that which triggered the stop, then the individual may be detained for as long as that new articulable and reasonable suspicion continues, even if the officer is satisfied that the suspicion that justified the initial stop has dissipated. State v. Myers (1990), 63 Ohio App.3d 765,771. Whether or not the detention was reasonable depends upon the totality of the circumstances and the facts of each case. See State v.Bobo (1988), 37 Ohio St.3d 177, 178.
 {¶ 16} As to the issue of probable cause in OVI cases, this court held in State v. Swanson, 6th Dist. No. WD-05-065, 2006-Ohio-4798, ¶ 19-21:
 {¶ 17} "A strong odor of an alcoholic beverage, bloodshot and glassy eyes and slurred speech are classic observations indicative of insobriety. See, e.g., Columbus v. Dials, 10th Dist. No. 04-AP-1099,2005-Ohio-6305, at ¶ 35; State v. Lambrecht, 6th Dist. No. WD-04-079,2005-Ohio-5882, at ¶ 16; State v. Powers, 6th Dist. No. L-04-1210,2005-Ohio-5737, at ¶ 12. In each of these cases, courts concluded that such indicia, usually accompanied by poor performance on a horizontal gaze nystagmus test, constituted probable cause to arrest a subject for violation of R.C. 4511.19(A). We conclude the same."
 {¶ 18} In this case, the circumstances surrounding the stop gave rise to a reasonable suspicion of other illegal activity — driving under the influence of alcohol-which was different from the illegal activity which triggered the stop. We find that Trooper Mamere's decision to detain appellant was justified, even after the reason for the *Page 7 
initial stop had been resolved. See Myers, supra. Once appellant began to fix the taillight, Mamere developed new concerns that warranted continued detention of the vehicle and driver.
 {¶ 19} Based on the record of proceedings before the trial court and the law, we find that sufficient competent, credible evidence was presented to establish that Trooper Mamere had a reasonable, articulable suspicion that appellant was under the influence of alcohol and that the trooper's suspicion was formed during the course of a legally permissible encounter. The trial court did not err by denying appellant's motion to suppress. Accordingly, appellant's first and second assignments of error are not well-taken.
 {¶ 20} On consideration whereof, this court finds that appellant was not prejudiced and the judgment of the Ottawa County Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Ottawa County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4. *Page 8 
Mark L. Pietrykowski, P.J., William J. Skow, J., Thomas J. Osowik, J. CONCUR. *Page 1