[Cite as *Canton v. Cameron*, 2019-Ohio-3850.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CITY OF CANTON | JUDGES:<br>Hon. William B. Hoffman, P.J |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | Case No. 2018CA00179 |
| ROBERT C. CAMERON | |
| Defendant-Appellant | O P I N IO N |


CHARACTER OF PROCEEDINGS:      Appeal from the Canton Municipal Court,
                                                        Case No. 2018 TRD 08055

JUDGMENT:                                  Affirmed

DATE OF JUDGMENT ENTRY:      September 23, 2019

APPEARANCES:


For Plaintiff-Appellee                     For Defendant-Appellant

KRISTEN BATES-AYLWARD             ROBERT ROE FOX
Canton Law Director                       388 South Main Street, Ste. #402
                                                        Akron, Ohio  44311
JASON P. REESE
Canton City Prosecutor

CARRIE FRANKHAUSER
Assistant City Prosecutor
218 Cleveland Avenue, S.W.
Canton, Ohio  44702

*Hoffman, P.J.*

**{¶1}** Appellant Robert C. Cameron appeals the judgment entered by the Canton Municipal Court convicting him of gross overload of a vehicle (R.C. 339.01) upon his plea of no contest and fining him $214.00. Appellee is the city of Canton.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** On September 25, 2018 at 7:30 a.m., Officer Jeffrey Hothem of the Canton Police Department Traffic Bureau was monitoring commercial traffic in the area of West Tuscarawas Street and Interstate 77 in Canton, Ohio. His primary job involves commercial weight enforcement. He noticed a truck traveling southbound with what he believed to be items visible above the rails of the roll-off container. He began to follow the vehicle. While following the truck, he noticed the tires were bulging, which caused him to suspect the vehicle might be overweight.

**{¶3}** After following the truck for about two miles, he stopped the truck. Appellant was the driver of the truck. Officer Hothem directed Appellant to drive to the nearest scale, Brechbuhler Scales, to have the vehicle weighed. Brechbuhler Scales was approximately half a mile from the point at which the truck was stopped, and was the nearest scale. The vehicle was 1840 pounds overweight, and Officer Hothem cited Appellant for gross overload.

**{¶4}** Appellant filed a motion to suppress, arguing Officer Hothem lacked a reasonable articulable suspicion of criminal activity to justify the stop. Following a hearing, the trial court found Officer Hothem had twelve years of experience with the Canton Police Department and experience with other departments prior to coming to Canton. The court found he had training in dealing with commercial vehicles with the Stark County Sheriff's Department, the Ohio State Highway Patrol, the federal

government and the Canton Police Department, with his most recent training in May or June of 2018. The court found the officer's testimony to be credible. The court concluded the officer had reasonable suspicion the vehicle was overweight based on his observation items were sticking out of the box above the top rails, thereby indicating a heavy load, and his observation of the bulging tires. The court overruled the motion to suppress.

{¶5} Appellant changed his plea to no contest and was convicted as charged. The court fined him $214. It is from the November 13, 2018 judgment of conviction and sentence Appellant prosecutes this appeal, assigning as error:

I. THE TRIAL COURT'S DECISION OVERRULING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS WAS ERROR AS THERE WAS NO REASONABLE SUSPICION TO STOP OR DETAIN DEFENDANT-APPELLANT'S VEHICLE.

II. THE TRIAL COURT'S DECISION TO PRECLUDE DEFENDANT-APPELLANT FROM INQUIRING INTO THE FINANCIAL RELATIONSHIP BETWEEN THE CITING POLICE OFFICER AND THE WEIGH SCALE OPERATOR WAS ERROR AS THE CREDIBILITY OF THE POLICE OFFICER WAS CRITICAL TO THE DECISION MADE BY THE TRIAL COURT.

I.

{¶6} Appellant argues the court erred in overruling his motion to suppress because the body camera footage demonstrates no objects protruding from the truck,

and further does not demonstrate the tires were bulging. He argues the officer characterized the tire bulge as "not necessarily unordinary," and other factors such as underinflation could cause bulging tires. He further argues bulging tires alone does not provide reasonable suspicion to justify a stop of the truck.

{¶7} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141(1991); *State v. Guysinger*, 86 Ohio App.3d 592, 621 N.E.2d 726(1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 641 N.E.2d 1172 (1994); *State v. Claytor*, 85 Ohio App.3d 623, 620 N.E.2d 906 (1993); *Guysinger, supra.* As the United States Supreme Court held in *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "... as a general matter

determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶8}    When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See *State v. Dunlap,* 73 Ohio St.3d 308, 314, 1995–Ohio–243, 652 N.E.2d 988; *State v. Fanning* , 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).

{¶9}    In particular to the investigation of overweight trucks, R.C. 4513.33 states: "[a]ny police officer having reason to believe that the weight of a vehicle and its load is unlawful may require the driver of said vehicle to stop and submit to a weighing ..." The "reason to believe" requirement is a lower standard than the constitutional concept of probable cause. *State v. Compton*, 5th Dist. Licking No. 01CA00012, 2001-Ohio-1559. The 'reason to believe' standard has been interpreted to be the same as the 'reasonable suspicion' standard as set forth in *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Therefore, for a police officer to stop a vehicle and check its weight, the officer must be able to point to some reasonable and articulable facts which, when taken together with the rational inferences from those facts, lead the officer to believe that "the weight of the vehicle and its load is unlawful." *State v. Myers,* 63 Ohio App. 3d 765, 580 N.E.2d 61 (1990).   An investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044, paragraph one of the syllabus (1980).

{¶10} This court has previously held bulging tires alone provide sufficient reasonable suspicion to justify a stop of a commercial vehicle by a trained officer, and the

officer need not eliminate other possible causes, such as under-inflation, for the bulging

tires:

Appellant argues numerous courts of appeals have examined the "reason to believe" language of the statute, and have decided bulging or squatting tires, without more, do not provide sufficient reasonable suspicion for the arresting officer to stop the vehicle. We do not agree, but rather adopt the holding of the Fourth District Court of Appeals in *State v. Horsely* (January 25, 1999), Ross Co.App. No. 98CA2423, which held:

"We disagree, however, with the trial court's holding that bulging tires "without more" can never form a proper basis for an investigative stop. We believe that bulging tires coupled with an officer's training and experience can indeed give rise to a reasonable suspicion that a vehicle exceeds the applicable weight restrictions. Whether a certain tire's bulge is greater or more pronounced than a normal tire bulge is a factor that the trier of fact can consider when making a determination* * *

"We also recognize that innocent reasons may exist that can cause a tire to bulge under weight-permissible loads. For example, tire construction, low tire pressure, or extreme changes in temperatures can affect a tire's appearance. We note, however, that law enforcement officers are not required to rule out all possibilities of innocent behavior before initiating an investigative stop. *United States v. Holland* (C.A.9, 1975), 510 F.2d 453. Conduct consistent with innocent behavior may give rise to a

reasonable suspicion of criminal activity. *United States v. Soklow* (1989), 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1; *United States v. Gomez* (C.A.5, 1985), 776 F.2d 542."

**{¶11}** *State v. Ratta*, 5th Dist. Stark No. 2004CA00070, 2004-Ohio-6140, ¶¶ 32-34; *accord, State v. Swain,* 5th Dist. Stark No. 2005CA00243, 2006-Ohio-2727.

**{¶12}** Appellant does not challenge the finding the officer was trained in the area of commercial vehicle work, and had been doing commercial motor vehicle enforcement work for ten to twelve years. The officer testified repeatedly the tires on the vehicle driven by Appellant were bulging in a manner consistent with an overweight vehicle, and pointed out spots on the video taken from his body camera which, although blurry, demonstrated the bulge.

**{¶13}** Appellant somewhat mischaracterizes the officer's testimony the bulging of his tires was "not necessarily unordinary." Officer Hothem testified as follows:

Q. And – and you believe that that is an improper appearance for that tire?

A. Yes, sir.

Q. In- in- an unordinary?

A. That is not necessarily unordinary, however that is an indication to me prior to knowing the weights that that tire has load induced tire bulge on it from the amount of material or product or commodity that that vehicle's hauling.

Q. So let me clarify cause I- I don't want to know about other vehicles, I want to know about this vehicle.

A. U-mmm.

Q. You said that would not necessarily be out of the ordinary for that tire to look like that going down the road?

A. If it's overweight. If the vehicle's overweight, absolutely.

Q. Okay. Alright. So, there aren't vehicles of that kind that go down the road with that kind of distance between the road and the rim?

A. Providing they're following the law, no there aren't. But vehicles that are overweight will show exactly this is showing.

{¶14} Tr. 50-51.

{¶15} Taken in its entirety, the officer's testimony was the tire was "not necessarily unordinary" for an overweight vehicle.

{¶16} Based on the officer's consistent testimony throughout the hearing the tires were bulging in a manner consistent with an overweight vehicle, the officer's extensive training and experience in commercial weight enforcement and the trial court's finding the testimony of the officer was credible, we find the court did not err in finding the officer had a reasonable suspicion of criminal activity to justify stop of the vehicle.

{¶17} The first assignment of error is overruled.

II.

**{¶18}** In his second assignment of error, Appellant argues the court erred in restricting his questioning of Officer Hothem regarding his financial connection to Brechbuhler Scales.

**{¶19}** During cross-examination, Officer Hothem admitted in 2016, he entered into a relationship with Brechbuhler Scales whereby the business provided financial sponsorship of Officer Hothem's competitive tractor pulling team. The trial court prevented Appellant from presenting evidence of the specific amounts of financial remuneration Appellant received from Brechbuhler for his tractor pulling team, but Appellant proffered the exhibits, and they are a part of the record before this Court on appeal.

**{¶20}** Evid. R. 616(A) provides, "Bias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence." The admission or exclusion of relevant evidence rests within the sound discretion of the trial court, and the trial court's ruling as to such matters will not be reversed absent an abuse of discretion. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶21}** Appellant was permitted to question the witness regarding the existence of a financial relationship between himself and Brechbuhler Scales. We find the exclusion of the specific financial details of this arrangement between the parties was not an abuse of discretion. It is undisputed Brechbuhler was only half a mile from the spot of the traffic

stop, and was the nearest scale. Appellant did not challenge the results of the weighing process at Brechbuhler, opting instead to plea no contest to the charge his vehicle was grossly overweight. The officer's financial connection to Brechbuhler was only marginally relevant to the issue before the court on the motion to suppress, and the trial court did admit evidence of the existence and duration of the financial relationship.

{¶22} The second assignment of error is overruled.

{¶23} The judgment of the Canton Municipal Court is affirmed.


By: Hoffman, P.J.
Wise, J. and
Baldwin, J. concur